# MARY C. MERRYMAN ET AL. *vs.* THE CUMBERLAND PAPER COMPANY.

*Adverse Possession of Land Against a Co-Tenant—Running of Statute of Limitations Against Married Woman—Continuity of Adverse Possession.*

When one tenant in common conveys the whole estate in fee and his grantee enters and holds exclusive possession, such conveyance and possession is adverse to the title of the co-tenant, and if continued for twenty years bars the right of the ousted co-tenant.

In 1844 one Pigman became entitled to a two-thirds undivided interest in an unoccupied tract of land, and the other undivided third interest was owned by a married woman. In 1846 Pigman conveyed the whole tract, and not merely his interest, in fee to parties under whom the defendant in this action claim, by a deed setting forth the metes and bounds, courses and distances of the land. In 1852 the married woman's disability of coverture was removed, and in 1896 this action of ejectment was brought by the grantees of her heirs at law. *Held,*

1st. That the deed of 1846, if followed by the possession of the grantee, constituted an ouster of the co-tenant, and that upon the removal of the co-tenant's disability of coverture in 1852 she had under the Statute of Limitations (21 Jac. I, ch. 16), fourteen years in which to bring an action of ejectment.

2nd. That the evidence in the case is legally sufficient to show adverse, exclusive and continuous possession of the land by the defendant and those under whom it claims between 1846 the date of the ouster and 1866, the expiration of the statutory period of limitations, and that therefore the plaintiffs are not entitled to recover.

A deed of part of a tract of land, executed by a party who had previously conveyed all of his interest therein, does not have the effect of breaking the continuity of the adverse possession of the tract by the prior grantee against an ousted co-tenant.

Appeal from the Circuit Court for Garrett County (STAKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John E. Roller* and *R. T. Semmes*, for the appellants, submitted the cause on their brief.

*E. H. Sincell* (with whom were *John G. Wilson* and *Lloyd Lowndes, Jr.*, on the brief), for the appellee.

McSHERRY, C. J. delivered the opinion of the Court.

This is an action of ejectment. The appeal is from the Circuit Court for Garrett County. The record contains eight bills of exception. Seven relate to rulings on the admissibility of evidence and the eighth brings up for review the disposition made by the trial Court of the various prayers presented for instructions to the jury. The verdict and judgment were entered in favor of the defendant and the plaintiffs have appealed.

The view we take of the controversy will render it unnecessary for us to consider all the exceptions and prayers contained in the record and discussed in the briefs and at the bar; because there is one insuperable obstacle to a recovery by the appellants which is in no way dependent on and can in no manner be influenced by the questions that need not be considered.

The appellants instituted the suit in January, 1896, to recover from the appellee an undivided one-third interest in a tract of land containing eleven hundred and sixteen acres and known by the name "Recourse." The undivided interest

sought to be recovered in this proceeding was patented to Samuel Selby, in 1796, as tenant in common with James and Thomas Cook.  In February, 1799, Selby conveyed his undivided third interest to Catharine W. Johnson, eldest daughter of Col. Baker Johnson.  Under that deed and under a deed dated in September, 1894, from the heirs at law of Catharine W. Johnson, who had married William Ross, Esq., and who died in 1864, the appellants claim title to the undivided third interest in "Recourse" which is now in controversy. Mr. Ross predeceased his wife, having departed this life in 1852.  There is no dispute as to the ownsrship by the defendant, the appellee, of the other two-thirds undivided interest in the tract.  The pivotal point of the case is whether the appellee and those under whom it claims have acquired by adverse possession the one-third undivided interest patented to Selby, and subsequently sold to Miss Johnson who afterwards became Mrs. Ross.

Ordinarily it is true that the possession of one tenant in common is in contemplation of law the possession of his co-tenant, and for that reason no inference of adverse possession by the one against the other can arise from mere occupancy, collection and receipt of rents or similar acts of ownership. Nothing short of an actual ouster by the one of the other will amount to a disseizin.  Among the acts which constitute an actual ouster, it has been held where one tenant in common conveys the whole estate in fee and his grantee enters and claims and holds the exclusive possession that such conveyance, entry and possession must be deemed adverse to the title and possession of the co-tenant, and that such possession by the grantee, if continued for twenty years, will bar the title of the co-tenant.  And this is so because a conveyance of an estate in fee, and an entry under that conveyance, coupled with possession are open and unequivocal acts of ownership of such a nature as to give notice to the co-tenant that the entry and possession are hostile and adverse to his title.  *Rutter* v. *Small et al.*, 68 Md. 133; *Reed* v. *Taylor*, 5 Barn. & Adol. 575.

Conceding that the two-thirds undivided interest originally patented to James and Thomas Cook in the tract called ''Recourse'' is vested in the appellee under the various conveyances set out in the record; and it not appearing that the other one-third undivided interest acquired by Mrs. Ross (*nee* Miss Johnson) from Selby was ever conveyed by her to the appellee but purports to have been granted by her heirs at law in 1894 to the appellants, the practical and controlling inquiry, arising under a rejected prayer not numbered, but for convenience will be marked X and presented by. the plaintiffs below, is whether there was any legally sufficient evidence which should have been considered by the Court sitting as a jury, to show an actual ouster of Mrs. Ross by her co-tenants and an adverse possession thereafter of the whole tract by the ousting co-tenants and those claiming under them for a period of time sufficiently long to bar her title.   If her title was effectually barred by an actual ouster followed by the requisite adverse possession then her heirs at law inherited from her no estate in the land called "Recourse," and consequently conveyed none to the appellants by the deed of September, 1894. Ultimately the question is, not as to the *weight* of the evidence adduced, but as to its legal *sufficiency*.

*First*, then, as to the evidence relied on by the appellee to establish an actual ouster.   This specific question is raised by the appellants' second prayer, which was rejected, and among others by the appellee's second and sixth prayers which were granted.   These three last named prayers and the rejected prayer we have marked X and one other prayer which will be adverted to later on are for the reason given at the outset of this judgment the only ones we need consider.   It appears that Thomas and James Cook having died their heirs at law suffered the taxes on their two-thirds undivided interest to fall in arrear and their undivided interest was sold at public auction on August 28th, 1826, to Thomas Clutor who transferred his rights as purchaser to John White, Jr.; and to the latter, William McMahon, the tax collector, conveyed the interest so sold, by deed dated December the fifth, 1834.   On the ninth

day of May, 1843, Hamilton White and John White conveyed all the right, title and interest both at law and in equity of the grantors in and to the eleven hundred and sixteen acres unto Hanson B. Pigman in trust to sell and to apply the proceeds to the payment of the debts due by the grantors. By that conveyance Hanson B. Pigman acquired the two-thirds undivided interest which White had obtained under the deed from McMahon, the county tax collector; and Mr. Pigman became tenant in common with Mrs. Ross. Being such co-tenant Mr. Pigman on March twenty-second, 1844, conveyed to George K. Warner and others in fee-simple "all that tract or parcel of land called `Recourse or Resurvey on Recourse containing one thousand one hundred and sixteen acres, more or less, for the courses and distances whereof reference is made to the" deed from White to Pigman wherein the courses and distances are fully set forth; and this deed from Pigman to Warner and others was placed on record on May the twenty-first, 1846, among the land records of Allegany County, within which county the land was then situated. Here, then, Pigman, one tenant in common, conveyed to Warner and others, in fee-simple, by a deed setting forth the metes and bounds, courses and distances, *the whole and entire tract* of eleven hundred and sixteen acres, and not a mere undivided interest therein; and under the ruling in *Rutter* v. *Small, supra*, and the cases therein cited and relied on, an actual ouster of Mrs. Ross, the other tenant in common, was accomplished, save in so far as the disability of coverture arrested or suspended the effect of the ouster until the removal of that disability. In 1852 Mr. William Ross died and Mrs. Ross became discovert. From that date, she had fourteen years to assert her right and those fourteen years included the ten years allowed under sec. 2, 21 Jac. I, ch. 16. In 1866 the Statute of Limitations had barred Mrs. Ross, and if there is evidence legally sufficient to show that the appellee and those under whom it claims were in adverse exclusive, and continuous possession of the property for twenty years before this suit was brought, then there was no error committed in

refusing to grant the appellant's second prayer and the prayer which we have marked X, or in granting the second and sixth prayers of the appellee.

*Secondly :* Was there any legally sufficient evidence introduced tending to show adverse, exclusive and continuous possession by the appellee and those under whom it claims between 1846, the date of the ouster of Mrs. Ross, and 1866, the expiration of the statutory period of limitations ? It would serve no useful purpose were we to set forth the evidence on this subject at large, whilst it would, if that were done, needlessly protract this judgment beyond all reasonable bounds.

It is sufficient to say that there was abundant testimony tending to show an actual open, notorious, exclusive, continuous and adverse holding by those under whom the appellee claims title, for a much longer period than twenty years after the expiration of ten years from the date of the removal of the disability of Mrs. Ross; and if the trial Court, sitting as a jury, gave credence to that testimony, as it obviously did, we cannot disturb the verdict notwithstanding there may have been conflicting evidence adduced upon that subject by the plaintiffs.    This Court said in *Sadtler* v. *Peabody Heights Co.*, 66 Md. 5 : "In determining the question, whether one has an actual possession of property, we must take into consideration its character and locality, and the uses and purposes for which it is naturally adapted, for the possessory acts over an outlying and uncultivated piece of land, may be proved by acts of ownership somewhat different from what will be required in regard to land under enclosure and in actual cultivation." This large tract of eleven hundred and sixteen acres is situated in a sparsely settled section of Garrett County, and until within a very few years past was a vast wilderness.    Warner and the other grantees of Pigman, though not entering upon the land in person, did take possession of the entire tract and occupy it adversely, notoriously and exclusively in the person of an agent.    It was fenced in.    Surveys were made both by Warner and his co-grantees and by those who succeeded them in title, and the latter exercised no less unequivocal acts of

ownership than their predecessors had done.  In fact numerous acts of ownership were shown of more than a usually conclusive character considering the situation, the size and the surroundings of the land.

In conclusion it may be well to advert to one other question raised by the appellants' prayer numbered two and a half. That prayer was rejected.  By that prayer, an instruction was sought to the effect that by reason of a certain conveyance from Hamilton White to his son, James White, and a brief possession thereunder by the latter the continuity of the adverse possession upon which the defendant relies was broken and interrupted.  In point of fact and in legal effect that circumstance was one with which the Court had to deal and doubtless did deal in rejecting the appellants' prayer we have marked X.  But aside from this, there was no error committed in rejecting the prayer now being considered.  The deed from Hamilton White to his son was dated March 25th, 1879.  Though signed and acknowledged it was not witnessed. It undertook to convey all of the grantor's right, title and interest in and to 150 acres—part of Recourse—described by courses and distances, when in point of fact Hamilton White had previously conveyed all his title in fee-simple to McFerran by deed dated April the twelfth, 1869.  If Hamilton White's deed to his son, made twelve years *after* the grantor had parted with all the estate he had had in the property, could have had any effect whatever—surely it could have had none at all—it would have made the son a tenant in common with McFerran, and the latter was, through his agent Browning, himself in possession of "Recourse."  But even if he had not been so in possession the possession of his co-tenant White— if the latter were a co-tenant—was the possession of McFerran in the absence of an actual ouster of McFerran, and of this there is no pretence.

Upon a review of the whole case as we find no error in the refusal of the Court below to grant the appellant's second, second and a half and the unnumbered prayers, or in granting the appellees' second and sixth instructions; and as even if

there were errors in some of the other rulings the result of the case could not possibly be affected—they would be errors without injury—the judgment appealed against will be affirmed.

*Judgment affirmed with costs above and below.*

(Decided December 4th, 1903.)