FITSCHEN BROTHERS COMMERCIAL CO. ET AL., RESPONDENTS, *v.* NOYES' ESTATE, APPELLANT.

(No. 5,849.)

(Submitted March 23, 1926.   Decided April 17, 1926.)

[246 Pac. 773.]

*Quieting Title—Adverse Possession—Cotenancy—Ouster of Cotenant—What Sufficient—Findings—When Conclusive.*

Equity—Findings—When Conclusive—When not.
1. In equity cases the findings of the trial court will not be disturbed on appeal, except where the evidence clearly preponderates against them.

Appeal and Error—Presumption of Correctness of Judgment.
2. On appeal the presumption is indulged that the judgment is correct, and the burden rests on the appellant to show reversible error.

Quieting Title—Adverse Possession—Statute—"Claim of Title"—Definition.
3. The term "claim of title" used in section 9019, relative to adverse possession, in providing that where the occupant of land

1.   See 2 R. C. L. 204.
2.   See 2 R. C. L. 219.
3.   See 1 R. C. L. 707.

entered into possession "under claim of title" *etc.*, held to mean "color of title" which is title in appearance but not in reality, and color of title may be shown by any instrument purporting to convey the land or the right to its possession, provided claim is made thereunder in good faith.

Same—Adverse Possession—"Claim" and "Color of Title."

4.   While claim of title is essential to impart to possession the element of hostility, where land is claimed adversely, color of title, except where required by statute, is not required; but in the absence of color of title the possession extends only to the limits of the visible actual occupancy, while actual possession of part of a tract, with color of title to the whole, extends the possession to the limits fixed by the color of title.

Same—Cotenancy—Adverse Possession Claimed by Cotenant—Rule.

5.   A cotenant claiming as such who enters on the common land is but exercising a right which his title gives him and his resulting possession is presumed to be the possession of himself and his cotenants, but where it appears that he holds, not in recognition of, but in hostility to, the rights of his cotenants, his possession becomes adverse, and if maintained for the period provided for by the statute, will vest in him sole title by adverse possession.

Same—Adverse Possession by Cotenant—Ouster—What Sufficient.

6.   Though actual ouster of a cotenant must be made to appear in order that adverse possession claimed by his cotenant may be maintained, physical ouster is not essential, it being sufficient if exclusive ownership is claimed and the claimant denies the right of the other to any interest in the property.

Same — Possession by Grantee of Cotenant — Knowledge of Hostile Character of Possession Assumed in Other Cotenant.

7.   Where one goes into possession of property under a deed, executed by a cotenant, purporting to convey the entire property, such possession is hostile to that of the other cotenant and the latter is charged with knowledge of the hostile character thereof.

Same—Adverse Possession—Cotenancy—What Sufficient to Oust Cotenant.

8.   Where defendant in an action to quiet title to a portion of a mining claim asserted an interest in the land as tenant in common by mesne conveyance from its predecessor in interest, plaintiffs claiming title by adverse possession, and the testimony showed that plaintiffs entered into possession under color of title exclusive of the rights of all others, founding their claim upon a deed, that the predecessor for fourteen years prior to his death never asserted any right to the property, and, though living within two or three miles thereof and presumptively with knowledge of the use to which the property was being put by plaintiffs never demanded any portion of the rents, issues and profits derived therefrom, the adverse ownership by plaintiffs was suffi-

---

4.   Necessity of color of title when not expressly made a condition by statute to found title by adverse possession, see note in 15 **L. R. A.** (n. s. 1178.   See, also, 1 **R. C. L.** 708.

5.   See 1 **R. C. L.** 741.

6.   See 1 **R. C. L.** 742.

cient to charge him with knowledge and sufficient to oust him, and to warrant a finding of title by adverse possession as a matter of law, under the above rules.

[1]    Appeal and Error, 4 C. J., sec. 2869, p. 900, n. 96.
[2]    Appeal and Error, 4 C. J., sec. 2722, p. 775, n. 26.
[3]    Adverse Possession, 2 C. J., sec. 323, p. 168, n. 35; sec. 324, p. 169, n. 36; sec. 335, p. 175, n. 81; sec. 403, p. 199, n. 79.
[4]    Adverse Possession, 2 C. J., sec. 332, p. 172, n. 70; sec. 497, p. 230, n. 99; sec. 507, p. 235, n. 41.
[5]    Tenancy in Common, 38 Cyc., p. 21, n. 88; p. 25, n. 99.
[6]    Tenancy in Common, 38 Cyc., p. 25, n. 99.
[7]    Tenancy in Common, 38 Cyc., p. 33, n. 11; p. 34, n. 16; p. 37, n. 32.
[8]    Adverse Possession, 2 C. J., sec. 621, p. 276, n. 59; sec. 622, p. 281, n. 69.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION to quiet title by Fitschen Brothers Commercial Company and others, against The Noyes' Estate. Judgment for plaintiffs affirmed.

*Mr. Harry P. Bennett, Messrs. Templeman, Sanner & Furman,* and *Messrs. Canning & Geagan,* for Appellant, submitted a brief. *Mr. J. L. Templeman* and *Mr. P. E. Geagan,* argued the cause orally.

What is "color of title" is a matter of law and when the facts exhibiting the title are shown the court will determine whether they amount to a color of title. (*Wright* v. *Mattison,* 50 U. S. 50, 15 L. Ed. 280 [see, also, Rose's U. S. Notes]; *Latta* v. *Clifford,* 47 Fed. 614; *Black* v. *Tennessee etc. Co.,* 93 Ala. 109, 9 South. 537.) Color of title is defined to be that which in appearance is title but which in reality is no title and therefore is a writing which upon its face professes to pass title yet does not do so either from the want of title in the person making it or from the defective conveyance that is used,—a title that is imperfect but not so obviously so that it would be apparent to one not skilled in the law. The peculiar virtue of color of title is that physical possession of a part is

possession of the described tract.    (*Morrison* v. *Linn,* 50 Mont.
396, 147 Pac. 166.)

Section 9019, Revised Codes, presupposes that a color of title
instrument purports on its face to convey the entire title to
a given tract well described and therefore does not even im-
pliedly include the instance of a conveyance of an undivided
part, thereby evidencing a cotenancy with someone else, or the
instance as here presented of a conveyance of all interest of
the grantors in the strip.    Here the plaintiffs have been good
enough to show *de hors* the quitclaim and by deraignment of
the record title that their instrument of color actually created
an equal cotenancy with John Noyes.    We may assume that a
quitclaim purporting to convey an entire tract of land will
give rise to color of title, and be within the purview of the sec-
tion, but plaintiffs' quitclaim does not purport to convey any
title.    Even a layman could guess that he might be getting
nothing by virtue of an instrument granting all interest only.
It is assumed that the section by defining what is color of title
necessarily excludes what is not color of title.    The defendant
therefore contends that plaintiffs' alleged color of title instru-
ment is not any color of title instrument contemplated by the
section.

By the second count of the complaint the plaintiffs denomi-
nate the exhibit thereto a "grant deed." It is a quitclaim.    The
distinguishing characteristic of a quitclaim deed is that it is
a conveyance of the interest or title of the grantor in and to
the property described rather than of the property itself.
(Note to 3 A. L. R. 945.)    Furthermore, while plaintiffs took
only such title as their grantors had, yet they took even that
subject to the prior deed by their common grantor Roach to
Noyes.    (*Wetzstein* v. *Largey,* 27 Mont. 212, 70 Pac. 717.)
And any possession of the strip had by plaintiffs anterior to
their quitclaim of 1885 or subsequent thereto will be presumed
by the law to have been a possession subservient and sub-
ordinate to the legal title.    (*Morrison* v. *Linn, supra; Black-
foot Co.* v. *Burks,* 60 Mont. 544, 199 Pac. 685.)

By section 9019 an entry or a taking of possession of the land described in the color of title instrument is made a cardinal prerequisite to any beginning of running of adverse possession. The color of title instrument itself is not any evidence of entry or of beginning of adverse possession. (*Christy* v. *Spring Valley Water Works,* 97 Cal. 21, 31 Pac. 1110.)

The manifest contemplation of section 9019 is that the day of entry into possession under the color of title instrument marks the beginning of the period of the adverse and continuous possession which may ripen into title. The design of the statute is not in any way to weaken or to break down record titles, but to afford a remedy to one who, having spent his money for a color of title, goes into possession thereunder, and works and improves the land for a certain period of years without an ejectment suit being brought against him by the real owner. The statute merely predecides that if such a condition should exist then the condition of such color of title holder and worker is to be preferred in the courts to the condition of the record owner who has stood by and suffered such a condition to be for the statutory number of years. Without doubt Montana copied the color of title statute from California. At page 410 Kerr's Cyclopedic Codes of California (1920) may be found a footnote accurately stating the elements of evidence necessary to establish constructive possession under color of title. The elements are these: ''1. Proof of entry under deed or other instrument in writing, or under decree of judgment of court of competent jurisdiction, in which there is definite and certain description of the land and its boundaries. 2. Proof that entry was in good faith. 3. Proof of actual possession of some portion of the land. 4. Proof that the land in actual possession is part of land described in deed or other instrument in writing, or in decree or judgment. 5. Proof that land claimed by constructive possession is land described in the deed. 6. Proof that no person was in actual occupancy of the land claimed by constructive possession at

date of entry; if description is indefinite or calls in deed so un-
certain that boundaries cannot be definitely located; or if there
is some one in actual occupancy of land claimed to be in con-
structive possession, this fact defeats such possession."

Plaintiffs' proof shows neither a permissible color of title
instrument nor an entry, nor an entry in good faith, nor that
the strip was vacant and open to entry, nor that plaintiffs
ousted anybody from the part of the strip said by them to have
been under fence.

"Adverse possession by one cotenant as against another is
not shown by mere possession, payment of taxes, and appro-
priation of the rents and profits." (*McMahill* v. *Torrence,*
163 Ill. 277, 45 N. E. 269; *Thomas* v. *Chapin,* 274 Ill. 95, 113
N. E. 82; *Drewery* v. *Nelms,* 132 Tenn. 254, 177 S. W. 946;
7 Ruling Case Law, 849; 38 Cyc. 25; and also, *Rodda* v. *Best,*
68 Mont. 205, 217 Pac. 669, 673.)

*Messrs. Kremer, Sanders & Kremer, Mr. Miles J. Cava-
naugh* and *Mr. H. C. Hopkins,* for Respondents, submitted a
brief; *Mr. Cavanaugh* argued the cause orally.

"Color of title" is not the title that will pass, but what
might pass. (*Packard* v. *Moss,* 68 Cal. 123, 8 Pac. 818; *Bas-
sett* v. *Spokane,* 98 Wash. 654, 168 Pac. 478; *Abeles* v. *Pillman,*
261 Mo. 359, 168 S. W. 1180; *Morrison* v. *Linn,* 50 Mont. 396,
147 Pac. 166.)   Anything in writing which serves to define the
extent of the claim, is color of title. (*Street* v. *Collier,* 118 Ga.
470, 45 S. E. 294.)   A deed actually conveying nothing, may be
color of title. (*Cameron* v. *United States,* 148 U. S. 301, 37
L. Ed. 459, 13 Sup. Ct. Rep. 595 [see, also, Rose's U. S. Notes].)
Any instrument which to a layman would appear to convey
title, is color of title. A husband's deed to his wife's interest,
though he had no right to convey, was held color of title.
(*Street* v. *Collier, supra.*)   Wherever the claim of adverse
possession is set up, the idea of right by title is excluded.
(*La Crosse* v. *Cameron,* 80 Fed. 264, 25 C. C. A. 399; *Hughes*

*v. Wyatt,* 146 Iowa, 392, 125 N. W. 334.)    The effect of color
of title is merely to fix the character and extent and limits of
the possession.    The question of color of title is only material in
so far as the possession claimed is derived from the description
in the instrument, that is, it applies only to the constructive
possession of the claimant.    (*Carpenter* v. *Coles,* 75 Minn. 9, 77
N. W. 424.)    A quitclaim deed is sufficient color of title on
which to base adverse possession under the statute of limita-
tions.    (*Archer* v. *Beihl,* 136 Fed. 113, 69 C. C. A. 101.)    See
*Packard* v. *Moss,* 68 Cal. 123, 8 Pac. 818.

Where real estate is held in common, and one tenant as-
sumes to convey the entire estate by metes and bounds, the
deed will give color of title as to the whole tract, and an entry
thereunder by the purchaser, claiming title to the whole tract,
will operate as an ouster and disseisin of the cotenant.    (2
R. C. L., p. 185, sec. 355; *Unger* v. *Mooney,* 63 Cal. 586, 49
Am. Rep. 100; *Lloyd* v. *Mills,* 68 W. Va. 241, 32 L. R. A.
(n. s.) 702, 69 S. E. 1094; *Gardiner* v. *Hinton,* 86 Miss. 604,
109 Am. St. Rep. 726, 38 South. 779; *Prescott* v. *Nevers,* 19
Fed. Cas. No. 11,390; *Bath* v. *Valdez,* 70 Cal. 350, 11 Pac.
724; *Packard* v. *Moss,* 68 Cal. 123, 8 Pac. 818; *Street* v. *Col-
tier,* 118 Ga. 470, 45 S. E. 294; *Culler* v. *Motzer,* 13 Serg.
& R. (Pa.) 356, 15 Am. Dec. 604; *Rosborough* v. *Cook* (Tex.
Civ. App.), 148 S. W. 1120; *Merriman* v. *Blalack,* 56 Tex. Civ.
App. 594, 121 S. W. 552.)

It is a general rule of law that a stranger going into pos-
session under a deed from one cotenant purporting to convey
the whole, is not a cotenant, and that a quitclaim deed to
the tract is such a deed, and that the record thereof itself is
an ouster.    (*Prescott* v. *Nevers,* Fed. Cas. No. 11,390; *Hall*
v. *Law,* 102 U. S. 461, 26 L. Ed. 216 [see, also, Rose's U. S.
Notes]; see, also, *Elder* v. *McClasky,* 70 Fed. 529, 17 C. C. A.
251; *Oglesby* v. *Hollister,* 76 Cal. 136, 9 Am. St. Rep. 177,
18 Pac. 146; *Bryan* v. *Atwater,* 5 Day (Conn.), 181, 5 Am.
Dec. 136; *Culler* v. *Motzer,* 13 Serg. & R. (Pa.) 356, 15 Am.

Dec. 604; *Unger* v. *Mooney*, 63 Cal. 586, 49 Am. Rep. 100; *Merriman* v. *Blalack*, 56 Tex. Civ. App. 594, 121 S. W. 555.)

A deed, though void, may be color of title. (*Hodgson* v. *Federal Oil*, 285 Fed. 546.) Where a person enters under color of title, his right extends to the boundaries defined therein, except as to any portion thereof held adversely by another. (1 R. C. L., p. 727, sec. 43.) Where the possession has ripened into a title, it cannot be divested by nonuser or abandonment, or in any way except by a conveyance. (*Dyson* v. *Knight*, 130 Ga. 573, 124 Am. St. Rep. 179, 61 S. E. 468; 1 R. C. L., pp. 689, 690, 723.)

Admitting for the sake of argument that the making and recording of the deed did not constitute such an ouster as would be an actual or immediate ouster of Noyes, as a question of law, and which would compel him to assert his right within the statute of limitations, "it is apprehended that where a cotenant continues in notorious possession for a great length of time, without interruption or claim of right by the other cotenants the jury (or court) would be authorized to presume an actual ouster, and the possession being continued for the requisite length of time, to presume a grant." (Buswell on Limitations and Adverse Possession, sec. 302, p. 418; *Bryan* v. *Atwater*, 5 Day (Conn.), 181, 5 Am. Dec. 136; *Parker* v. *Merrimack Prop.*, 3 Met. (Mass.) 91, 37 Am. Dec. 121; *Cloud* v. *Webb*, 15 N. C. 290, 25 Am. Dec. 711; *Jackson* v. *Whitbeck*, 6 Cow. (N. Y.) 632, 16 Am. Dec. 454; *Chambers* v. *Pleak*, 6 Dana (Ky.), 426, 32 Am. Dec. 78; *Gregg* v. *Blackmore*, 10 Watts (Pa.), 192 *Frederick* v. *Gray*, 10 Serg. & R. (Pa.) 182; *Susquehanna & W. V. Ry.* v. *Quick*, 61 Pa. 328.) There is no doubt that where one tenant in common takes possession of the whole property as such and uses it in the ordinary manner, his possession will be accredited to his relationship as tenant in common. This does not necessarily imply that there must be an actual physical ouster by one cotenant of another to constitute adverse possession, but it is sufficient if the tenant claims exclusive ownership and by his

conduct denies the right of others to any interest in the property.   (*Kidd* v. *Borum,* 181 Ala. 144, Ann. Cas. 1915C, 1226, 61 South. 100; *Packard* v. *Johnson,* 51 Cal. 545), receiving rents, issues and profits; conveying, or leasing; encumbering; improving, clearing; paying insurance, *etc.*   (1 R. C. L., 697.) Inclosure is always evidence of adverse possession, though not always necessary.   (*Normant* v. *Eureka Co.,* 98 Ala. 181, 39 Am. St. Rep. 45, 28 Am. St. Rep. notes, p. 151, Ann. Cas. 1913A, 747.   If possession is open and notorious, it will be presumed that the owner knew of it.   (*Strong* v. *Baldwin,* 154 Cal. 150, 129 Am. St. Rep. 149, 97 Pac. 178; *Carny* v. *Hennessey,* 74 Conn. 107, 92 Am. St. Rep. 199, 49 Atl. 910.)   It is enough that the possession is of such a continuous nature that it is apparent to men of ordinary prudence, taking into consideration the character of the land.   (*Swan* v. *Munch,* 65 Minn. 500, 60 Am. St. Rep. 491, 35 L. R. A. 743, 67 N. W. 1022.)

Whenever the rights of a cotenant are invaded by the occupation or claim of a cotenant so as to give the former a right of action, and the invasion is continued for the full period, and the cotenant having the right does not assert it during the period of limitations, the invasion ripens into a legal title that cannot be divested except by grant.   (*Bryan* v. *Atwater,* 5 Day (Conn.), 181, 5 Am. Dec. 36; *Bullerdick* v. *Hermsmeyer,* 32 Mont. 541, 81 Pac. 334.)   There is no doubt that mining claims may be held adversely for other uses than mining. (*Stettheimer* v. *City of Butte,* 60 Mont. 111, 198 Pac. 455; *Barnard Realty Company* v. *City of Butte,* 48 Mont. 111, 136 Pac. 1064; *Simmon Creek Coal Co.* v. *Doran,* 142 U. S. 417, 35 L. Ed. 1063, 12 Sup. Ct. Rep. 239 [see, also, Rose's U. S. Notes].)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action to quiet title to a tract of land comprising 4.06 acres, located in Silver Bow county.   Upon issue joined the cause was tried to the court without a jury, after the conclusion of which findings of fact and conclusions of law were

by the court made in favor of the plaintiffs, upon which judgment was duly entered. The appeal is from the judgment.

The complaint is in two counts, the first of which alleges that the plaintiffs are now, and that they and their predecessors in interest ever since September 22, 1885, have been, the owners in fee, in possession, and entitled to possession of the land in question, comprising a portion of the Minnie Jane quartz lode mining claim, and that the defendant, without right whatsoever, claims an estate or interest therein adverse to the plaintiffs. The second count predicates the plaintiffs' right to the property, as against any right or claim of the defendant, upon adverse possession for a period of more than ten years prior to the institution of the action, and ever since September 22, 1885, by virtue of a duly recorded deed from the original owners of the property. By its answer the defendant denied the plaintiffs' ownership or exclusive right to the land, and pleaded affirmatively that by reason of a prior grant made by the owners of the property on March 11, 1884, duly recorded, the defendant's predecessor in interest became the owner of an undivided one-half interest in the entire Minnie Jane quartz lode mining claim, and by reason of mesne conveyances the defendant succeeded to an undivided one-half interest in the portion of the mining claim involved in this action; that by virtue of such grant the defendant and its predecessors have ever since been in continuous possession of such interest therein, and have held the same as tenants in common, and that at no time prior to the commencement of the action had the plaintiffs, or their predecessors, held such tract of land in hostility to the defendant's ownership of a one-half interest therein.

By reply the plaintiffs denied the defendant's claim of ownership of an undivided one-half interest in the property, and pleaded an estoppel against the defendant. By way of estoppel it is averred that in the year 1880 one George C. Fitschen, the predecessor in interest of the plaintiff Fitschen Bros. Commercial Company, and the plaintiff Benjamin D.

Phillips, were the owners and in possession of the Prospector lode mining claim located May 19, 1875; that on or about February 17, 1880, Jeremiah Roach and Josephine Wampler became the owners of the Minnie Jane lode claim which was located August 18, 1875; that on or about August 22, 1881, Roach and Wampler made application to the United States Land Office for a patent to the Minnie Jane lode claim; that upon official survey of that claim for a patent it was found to conflict with the Prospector lode claim; that thereupon the owners of the latter claim threatened and were about to file an adverse claim and bring action to determine the rights of the parties to the area in conflict, when an amicable adjustment was brought about, whereby it was agreed that Roach and Wampler might proceed to procure a patent for the Minnie Jane lode mining claim in accordance with their application therefor, provided that so soon as they received patent they would deed to Fitschen and Phillips one-half of the portion thereof in conflict with the Prospector lode claim, and an additional portion of the Minnie Jane lode claim, free from all cost and expenses, the property so to be conveyed being that which is involved in this action; that the owners of the Prospector lode kept their agreement in all respects; that on or about April 9, 1883, a patent was issued for the Minnie Jane lode claim covering the tract of ground in conflict with the Prospector claim; that on or about March 11, 1884, Jeremiah Roach borrowed money from John Noyes, and in order to secure the repayment thereof executed and delivered the deed mentioned and referred to in the defendant's answer; that such deed was intended by the parties to be simply a mortgage as security for the debt and nothing more; that it was never intended by the parties to the deed to include therein that portion of the Minnie Jane lode, embracing the tract in question, which was, before the issuance of patent for such claim, agreed to be conveyed to Fitschen and Phillips, such property being included in the deed by the mutual mistake of the parties; that neither Roach nor Noyes, at any time or at all, had

or claimed to have any interest in the tract in controversy; that when the money borrowed by Roach was repaid to Noyes the latter reconveyed to Roach, or persons designated by him, all of the property mentioned and described in the deed attached to the defendant's answer, except the undivided interest in that portion of the Minnie Jane lode claim in dispute in this action; that the failure to reconvey such undivided one-half interest in and to that portion of the Minnie Jane lode claim was a result of mutual mistake and inadvertence; that during all of this time Benjamin D. Phillips and George C. Fitschen, the latter being the predecessor of the plaintiff Fitschen Bros. Commercial Company, were in the open, notorious, undisputed, adverse, and hostile possession of the ground in question, claiming it as their own against all the world, and that these facts were well known to John Noyes, predecessor in interest of the defendant; that on or about the twenty-second day of September, 1885, Jeremiah Roach and Josephine Wampler, pursuant to the agreement made with Phillips and George C. Fitschen to convey to them the strip of ground in controversy, made, executed, and delivered a deed of conveyance, conveying and confirming to them title to such strip of ground, which fact was well known to John Noyes, the predecessor in interest of the defendant; that, although the plaintiffs herein have ever since the twenty-second day of September, 1885, been in the open, notorious, exclusive, hostile, and adverse possession of the land in question, claiming the same as their own under and by virtue of their right to the same as a part of the Prospector lode mining claim, and under the agreement entered into in settlement of the adverse claim, and by virtue of the deed thereto from Roach and Wampler of September 22, 1885, and although the fact of such possession and claim of exclusive ownership thereby asserted by the plaintiffs was well known at all times to John Noyes, he never at any time made any claim to or on the plaintiffs, or either of them, or their predecessors in interest, to or for any right, title, interest, or estate

in the strip of ground in question, or any part, parcel, or portion thereof, either as to an undivided interest or otherwise, but at all times acknowledged and acquiesced in the plaintiffs' right and claim of exclusive ownership thereof, and that neither the defendant nor its predecessors in interest ever made or asserted any claim or right or interest in or to the strip of ground in controversy until within one year next preceding the commencement of this action.

The plaintiffs in their complaint deraign their record title by a deed dated September 22, 1885, recorded the following day, from Jeremiah Roach and his wife and Josephine Wampler and her husband to George C. Fitschen and Benjamin D. Phillips, purporting to transfer all right, title, interest, and estate to the tract of land involved, which is therein particularly described. By its answer the defendant founds its title to an undivided one-half interest in the property upon a deed executed on the eleventh day of March, 1884, recorded the day following, from Jeremiah Roach and his wife to John Noyes, covering an undivided one-half interest in and to the entire Minnie Jane lode claim, and a deed for a one-half interest in and to the particular tract involved, dated April 10, 1912, filed for record April 18, 1912, from the heirs of John Noyes, deceased, to the defendant, the Noyes Estate.

The plaintiffs' proof discloses record title to the tract of ground in dispute to be an undivided one-fourth in the plaintiff Phillips, an undivided one-fourth in the plaintiff corporation, and an undivided one-half in the defendant company. From the evidence it appears that the Prospector lode was located May 19, 1875, prior to the location of the Minnie Jane lode, by predecessors of the plaintiffs, and that in the year 1879, as a result of conveyances, George Fitschen and Benjamin D. Phillips had succeeded to all of the rights of the locators of the Prospector lode, and owned and possessed the same under the laws of the United States as co-owners. The Minnie Jane lode was located August 18, 1875, and on February 21, 1880, all of the rights of the locators thereof were vested equally in Jeremiah

Roach and Josephine Wampler, who made application for a patent thereto from the United States and had the claim surveyed for patent on June 26, 1881. By the survey a conflict with the Prospector lode was disclosed, and it was then agreed in writing that Roach and Wampler would be permitted to proceed to obtain patent to the Minnie Jane claim without adverse action by the owners of the Prospector, provided that after patent was issued the applicants would convey unto the owners of the Prospector a certain portion of the ground embraced in the Minnie Jane survey. This compromise agreement was not recorded, and has become lost. As to its contents, Reece Wampler, surviving husband of Josephine Wampler, deceased, and one of the signatories thereto, gave as his recollection of its contents that it was agreed to divide the disputed ground and on to the east end line of the Minnie Jane, which was beyond the east end line of the Prospector. He says: "We agreed to divide the disputed ground that they overlapped on the Minnie Jane and let it run through their eastern end line to our (the Minnie Jane) eastern end line."

The recollection of the plaintiff Phillips is that: Where the Minnie Jane overlapped on the Prospector, "they were to deed back the north portion, and running out to the end of the Minnie Jane line; it went out and took in some land on the Minnie Jane, and we lost some land on the south side; we lost more land than we got. George Fitschen and I agreed with Mr. and Mrs. Wampler and Jerry Roach to not adverse that portion of the Minnie Jane mine which conflicted with the Prospector, and let them get the title, and as soon as they received the patent from the United States to deed back the north portion of the Minnie Jane, the dividing or south line of the Prospector, that is, taking in the portion of the Minnie Jane that was to be deeded back to George C. Fitschen and B. D. Phillips."

Patent for the Minnie Jane lode was issued to Jeremiah Roach and Josephine Wampler December 15, 1882. Later, on December 28, 1883, patent was issued to Phillips and Fitschen

for the Prospector.   The following diagram will aid in a better understanding of the controversy:

NOTE: SHADED PORTION SHOWS "TRACT IN CONTROVERSY,"
4.6 ACRES.

The dotted lines shown within the confines of both claims indicate the area in conflict, and the tract of ground involved in this action is shown within the ribbed lines on the Minnie Jane claim.

After patent was issued to the Minnie Jane, Jeremiah Roach deeded an undivided one-half interest therein to John Noyes, which deed, dated March 11, 1884, stood of record in his name until his death in March, 1902.   It was inventoried as a part of his estate and distributed to his heirs, who later deeded it to the defendant company.   George Fitschen died in October, 1905, and his brother Gus acted as administrator of his estate.   The latter is now the president of the plaintiff corporation.   Jeremiah Roach died in 1895, but from the record it is not clear just when Josephine Wampler died.   However, it would appear that she died before John Noyes.

Although many mining claims and interests therein are described in the decree of distribution in the estate of George Fitschen, the tract in controversy is not mentioned.   From 1912 to 1915 the Noyes estate paid the taxes upon the entire Minnie

Jane claim, comprising 19.45 acres, although the property had been assessed to Roach and Wampler. Taxes have been paid upon the tract involved by Phillips, George Fitschen, and the plaintiff company ever since the year 1917, and ever since 1884 they have exercised complete ownership over it, leased it, and collected all rents and royalties without making accounting to John Noyes, his successors, or any other person whomsoever. In the year 1891 or 1892 the Butte, Anaconda & Pacific Railway Company built its tracks over the Minnie Jane and Prospector lodes, and in 1895 it made purchase of the right of way therefor from George C. Fitschen and Phillips, across the ground now in dispute. The deed of right of way is dated January 1, 1895, and describes the tract involved by metes and bounds, and conveys a right of way of 100 feet across the same, and refers to it therein as "a strip of land across that portion of the Minnie Jane lode claim, lot No. 203, known as 'tract conveyed' to Fitschen and Phillips." The purchase price therefor was paid alone to Fitschen and Phillips, and they made no accounting thereof to Noyes, nor was an accounting even requested for the amount so paid or for rents or royalties collected by Fitschen and Phillips since 1884. The right of way deeds given the railway company by Roach and Wampler covered a right across the Minnie Jane lode to the southern boundary of the tract now in dispute. These deeds were executed in October, 1892. The right of possession and ownership of the tract involved in Phillips and Fitschen was never questioned until 1921, before the commencement of this action, although in 1918 or 1919 Gus Fitschen first learned that the Noyes estate claimed an interest in the ground.

By the deed from Roach to Noyes, March 11, 1884, there was conveyed, besides an undivided one-half interest in the Minnie Jane lode, lot No. 203, an undivided one-half interest in the Wild Bill lode; an undivided five twenty-fourths interest in the Belcher lode; an undivided one-fifth interest to the east half of the Olive Branch lode; a nine thirty-sevenths interest in the Golden Rule lode, and certain described city lots in the city of Butte. The consideration is recited in the deed to have been

the sum of $4,670. Roach was a brother-in-law of Noyes, and at the time of the execution of this deed the former was suffering considerable financial embarrassment. The records disclose the following judgments docketed against him at that time, later satisfied: Cause 600, date of judgment, February 15, 1883, amount $52.15, satisfied June 12, 1884; Cause 689, date of judgment, June 12, 1883, amount $3,714.70, satisfied in full by sale under execution dated September 11, 1883, of a one-half interest in the Wild Bill lode, and lots 10 and 11, block 26, original Butte town site. As shown by the records of redemption, this property was redeemed by Jeremiah Roach on the twelfth day of March, 1884, one day after the deed was made to Noyes of all of his property, including the half interest in the Minnie Jane, on the payment of $3,796.40; Cause 793, date of judgment, September 24, 1883, amount $222.61, satisfied March 13, 1888; Cause 825, date of judgment, September 21, 1883, amount, $152.10, satisfied March 12, 1888; Cause 951, date of judgment, February 6, 1884, amount $244.26, satisfied March 12, 1888.

The judgments in causes Nos. 793, 825, and 951 were satisfied on March 12 and 13, 1888. This latter date is significant, for it is the date on which Noyes deeded back to Roach the one-half interest in the Minnie Jane lode, excluding the strip in controversy, which theretofore had been deeded to Fitschen and Phillips by Roach and Wampler. On August 19, 1885, Noyes sold the Wild Bill lode to Walter MacKay for $20,000. February 5, 1885, Noyes sold the five twenty-fourths of the Belcher lode to Pat Clark for $5,000. On July 2, 1885, Noyes deeded to Alice Roach, wife of Jeremiah Roach, the city lots described in the Roach deed of March 11, 1884, for a consideration of $1,000. On August 8, 1887, Noyes deeded back to Roach his one-fifth interest in the Olive Branch lode claim for a stated consideration of $1. By deed dated March 13, 1888, Noyes and wife deeded back to Jeremiah Roach all interest in the Minnie Jane lode claim, survey No. 203, describing as the property so deeded all of that claim save the tract in controversy here. The consideration stated is the sum of $2,000. The omission of

the northerly portion of the claim from this deed by Noyes was manifestly intentional. And on June 9, 1888, Noyes deeded all interest in the Golden Rule lode to William Jack *et al.*, for a consideration stated of $1.

In his lifetime Noyes asserted no claim to the strip involved herein. And it must be remembered that on March 13, 1888, he deeded back to Roach all his right, title, and interest in the Minnie Jane lode, lot 203, carefully excluding the compromise strip agreed to be conveyed by Roach and Wampler to Phillips and Fitschen, which tract had theretofore been conveyed pursuant to such agreement by deed dated September 22, 1885; also, that Noyes did not die until March, 1902, and that at no time during his lifetime did he ever assert any claim to the land involved. He never demanded and never was given any accounting for the rents and royalties derived from the land, and Fitschen and Phillips alone asserted right of possession and ownership thereof to the exclusion of Noyes and all others. Mr. Phillips testified that he was on the controverted ground in the early nineties in company with John Noyes, George Fitschen, and "Fat" Jack Jones. Jones was an old-time hack driver, a well-known character in the community, and on the occasion mentioned, in the city of Butte, was employed to take Phillips and Fitschen out to the Prospector claim. Before leaving for the property they met Noyes, who, upon learning where they were going, expressed a desire to accompany them, as he wished to see a man by the name of Prouse who was working on a claim about one-half mile distant from the Prospector lode. The party were driven first to the claim where Prouse was working, and remained there about ten minutes, during which time Noyes got out of the hack and engaged in conversation with Mr. Prouse. From there the party drove over to the Prospector and Minnie Jane lodes. They stopped at a shaft on the east end of the strip in controversy. Phillips and Fitschen wished to inspect the work being done by their mining lessees, and to make determination as to whether they should proceed to operate it themselves. They went down the shaft, which was about 100 feet in depth, while Noyes remained on

top.   Mr. Noyes said nothing about these mining claims or the mining operations, and the party all returned to Butte together.   This is proof of at least one occasion where Noyes was on the ground after the conclusion of his dealings with Roach respecting the property, when he was conversant with what was being done on the property and the claim of ownership thereof by Phillips and Fitschen, and he made no objection and asserted no claim to any portion of the property.   Moreover, from 1884 to the present date the southern boundary of the compromise strip has been distinctly marked upon the ground, and a considerable portion of it, together with other portions of the Prospector claim, lying to the north, has been inclosed by a fence, inclosing surface area of the Prospector lode, which was leased from time to time by Fitschen and Phillips to dairymen and hog raisers.   The southern boundary of such inclosure follows the southern line of the compromise strip.   At all times after the making of the compromise agreement the parties thereto were careful to recognize the southern boundary of the strip as the northern side line of the Minnie Jane lode and the southern side of the Prospector lode.   More than thirty-five years elapsed from the date of the deed to Noyes before anyone claiming under him was ever heard to assert claim to the compromise strip.

The trial court made findings that: "The plaintiffs are now, and they and their predecessors in interest were continuously, for more than ten years immediately preceding the commencement of this action, to-wit, ever since September 22, 1885, in the actual, open, notorious, peaceful, exclusive, adverse, and hostile possession of the tract of land or strip of mining ground described in said amended complaint as against the whole world and particularly the defendant herein and its predecessors in interest, under color of title thereto, to-wit, a deed of said date from Jeremiah Roach and his wife, Alice Roach, and Josephine Wampler and her husband, Reece B. Wampler, to the plaintiff Benjamin D. Phillips and George C. Fitschen, the predecessor in interest of the plaintiff Fitschen Bros. Commercial Company conveying said tract or strip; that the defendant prior and up

to the commencement of this action claimed and still claims an interest adverse to the plaintiffs in and to said strip of ground, but that the same was and is wholly without right."

The only question involved necessary to a decision of this appeal is: Are the court's findings justified?

In equity cases the findings of the trial court will not be [1] disturbed on appeal, except in cases where the evidence clearly preponderates against them. This rule is so firmly established by repeated decisions of this court as not to require the citation of decisions. (*In re Noyes' Estate,* 40 Mont. 178, 105 Pac. 1013; *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842; *Kummrow* v. *Bank of Fergus County,* 66 Mont. 434, 214 Pac. 1098; *Huffine* v. *Miller,* 74 Mont. 50, 237 Pac. 1103.)

On appeal, the presumption is indulged, to begin with, that the findings are correct, and they will not be set aside save where there appears to be no substantial basis for them. [2] (*Gray* v. *Grant,* 62 Mont. 452, 206 Pac. 410.) The presumption prevails that the judgment of the district court is correct, and the burden rests on the appellant to show reversible error. (*State ex rel. Woare* v. *Board of Commissioners,* 70 Mont. 252, 225 Pac. 389.)

The contention of the defendant, however, is that the court's findings and judgment are contrary to the law. It is argued that the deed of March 11, 1884, to Noyes from Roach constituted Noyes a tenant with Wampler in the Minnie Jane, and that the deed from Roach and Wampler to Fitschen and Phillips in 1885, of the compromise strip, constituted Fitschen and Phillips tenants in common with Noyes therein, and that by reason of such relationship of cotenancy, the acts and conduct of Fitschen and Phillips with relation to the property have not been adverse. This argument is predicated upon the rule that the possession of property by one cotenant is generally considered the possession of all.

The statute provides: "When it appears that the occupant, [3] or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being

a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree or judgment, or of some part of the property, under such claim, for ten years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract." (Sec. 9019, Rev. Codes, 1921.)

In interpreting the meaning of the language employed, Mr. Justice Holloway, speaking for this court in the case of *Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166, said: "Much needless confusion has been introduced into the books by the ill-advised use of 'color of title' and 'claim of title' as synonymous. Indeed, the confusion is apparent in our own Codes.   Section 6436 [9019, Rev. Codes, 1921] considers a 'claim of title' founded upon a written instrument, or a judgment or decree of court.   Since the section is treating of title by adverse possession, and not of muniments which convey or confirm valid title, it is clear that our legislators fell into the common error and misused the phrase; for one who holds land under a written instrument, a statute or a judgment or decree of court which appears to convey or confirm title, but does not do so in fact, holds under 'color of title'; that is to say, he holds by virtue of something which gives him a colorable title only.   This is the meaning of the phrase as used by discriminating courts and text-writers. (1 Rul. Cas. Law, 707.)   *   *   *   It may be observed, in passing, that 'color of title' does not depend upon the validity or effect of the instrument, but entirely upon its intent and meaning.   (*Hindley* v. *Manhattan Ry. Co.,* 185 N. Y. 335, 78 N. E. 276.)   It may be in fact altogether invalid or ineffective for the purpose intended, but if it describes the land with sufficient certainty, purports to convey it, and is not void on its face, it gives color of title.   (*Allen* v. *Mansfield,* 108 Mo. 343, 18 S. W. 901.)   Sections 6436 [9019] and 6437 [9020] treat of adverse possession under color of title, as that phrase should be used."

- By the words "claim of title" used in the statute, it is apparent that color of title is meant. And color of title is that which is title in appearance, but not in reality. As a basis of claim by adverse possession, color of title may be shown by any instrument purporting to convey the land or the right to its possession, provided claim is made thereunder in good faith.

Much miscitation of authorities on the sufficiency of oral [4] color of title has resulted from a failure to distinguish between "claim of title" and "color of title." Claim of title is, of course, essential to impart to possession the element of hostility. Except where required by statute, color of title is not required to constitute adverse possession; but in the absence of color of title the possession extends only to the limits of the visible actual occupancy, while actual possession of part of a tract, with color of title to the whole, extends the possession to the limits fixed by the color of title. (See *Hamilton* v. *Wright* (1870), 30 Iowa, 480, and see 1 R. C. L. 706 *et seq.*; *Brooks-Scanlon Co.* v. *Childs*, 113 Miss. 246, 74 South. 147, 2 A. L. R. 1453.)

"'Color of title' and 'claim of title' are often confounded; the terms being used as if synonymous, whereas in fact they are very different things. 'Claim of title' is where one enters and occupies land, with the intent to hold it as his own, against the world, irrespective of any shadow or color or right or title as a foundation for his claim. 'Color of title' is the semblance or appearance of title, but which in reality is not. They are distinct from, but supplementary to, each other. Color of title, without claim, is of little effect. Claim of title, without color, may ripen into title to the land actually occupied, while, with it, it may ripen into title not only to the land actually occupied, but to all described in the color of title, if that actually occupied be a part thereof." (*Crowder* v. *Doe,* 162 Ala. 151, 136 Am. St. Rep. 17, 50 South. 230. See, also, *Hitt* v. *Carr,* 62 Ind. App. 80, 109 N. E. 456.)

"Color of title" is defined to be "a writing, upon its face professing to pass title, but which does not do it, either from

a want of title in the person making it, or from the defective conveyance that is used—a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law." (*Beverly* v. *Burke*, 9 Ga. 440, 54 Am. Dec. 351.) And in *Hall* v. *Law*, 102 U. S. 461, 26 L. Ed. 217, it is said: "Whenever an instrument, by apt words of transfer from grantor to grantee—whether such grantor act under the authority of judicial proceedings or otherwise—in form passes what purports to be the title, it gives color of title."

Thus it seems plain that the plaintiffs held the property in controversy under color of title since 1885, and the court's findings in this respect are proper.

But what of the defendant's contention that the possession of Phillips and Fitschen was that of cotenants with Noyes, and therefore the possession of all?

The rule applicable is well stated in Ruling Case Law (pages [5] 844–846): "When a cotenant claiming as such enters on the common land he is exercising a right which his title gives him; and his resulting possession is presumed to be consistent with his assumed title, and therefore to be the possession of his cotenants and himself. This proposition is based upon the supposition that the entry is made either *eo nomine* as tenant in common, or that it is silently made, without any particular avowal in regard to it, or without notice to a cotenant that it was adverse. But the doctrine has been long since held, and the authorities sustain it, that one tenant in common may so enter and hold as to render the entry and possession adverse, and amount to an ouster of a cotenant. And so, where once it appears that the party occupying the premises holds not in recognition of, but in hostility to, the rights of his cotenants, his possession ceases to amount to constructive possession by them, becomes adverse, and, if maintained for the period provided for by the statute of limitations, will vest in the possessor a sole title by adverse possession to the premises. When disseized by a fellow-tenant the others have a remedy in their own right, upon their own independent title, and if they do not exercise their right they must suffer the consequences of an adverse possession and lose their estate"

While it is true that actual ouster of the cotenants must ap-
[6] pear, this does not necessarily imply an actual physical
ouster, but it is sufficient if the grantee claims exclusive owner-
ship and by his conduct denies the right of others to any interest
in the property. (*Crawford* v. *Meis,* 123 Iowa, 610, 101 Am.
St. Rep. 337, 66 L. R. A. 154, 99 N. W. 186; *Parker* v. *Locks
& Canals,* 3 Met. (Mass.) 91, 37 Am. Dec. 121. In *Lucas* v.
*Crofoot,* 95 Conn. 619, 112 Atl. 165, it is said: "The acts upon
which the plaintiff relies are consistent with a holding in co-
tenancy, if the entry and possession were not hostile; but, being
hostile, adverse, and under claim and color of title, they are
clearly acts of adverse possession, and obviously consistent with
the disclaimer and disavowal of other tenants' interests, under
which possession was taken. The effect was to 'drive the respec-
tive owners and claimants to their action within the period of
the statute of limitations,' if they would protect their own
rights."

"Where a cotenant purports to convey the fee to entire
[7] premises held by him jointly with others, and the grantee
enters, endeavoring to establish to himself title to the entire
premises by adverse possession, it is essential that the cotenants
of the grantor should have notice of the adverse claim of the
grantee. (*Pickens* v. *Stout,* 67 W. Va. 422, 68 S. E. 354;
*Roberts* v. *Morgan,* 30 Vt. 319; *Lynch* v. *Lynch* (Tex. Civ.
App.), 130 S. W. 461.) But it is not essential that the co-
tenants should receive actual notice, if by reason of the facts
and circumstances they can be charged with notice that their
interests are being jeopardized." (*Fuller* v. *Swensberg,* 106
Mich. 305, 58 Am. St. Rep. 481, 64 N. W. 463.)

In *Liddell* v. *Gordon* (Tex. Civ. App.), 241 S. W. 750, the
court said: "If the record in this case conclusively shows con-
ditions indicating hostile claims of which the appellants were
compelled to take notice, it is not essential to the defense of
limitation that direct information in some other form should
have been communicated to them. The conveyance of the entire
property by one cotenant to a stranger * * * constitutes
an ouster of the other cotenants, and information of that fact

need not be direct. * * * The appellants could not, in the face of the exclusive appropriation of the rents by the cotenants in possession for so long a period of time, close their eyes and wait until some direct information had been communicated to them of a hostile claim."

"A conveyance * * * in fee, and entry under it, and possession, are notorious and unequivocal acts of ownership of such a nature as to give notice to the cotenant that the entry and possession are hostile and adverse to his title." (*Rutter* v. *Small*, 68 Md. 133, 6 Am. St. Rep. 434, 11 Atl. 698, *Merryman* v. *Cumberland Paper Co.*, 98 Md. 223, 56 Atl. 364.)

In *Olsen* v. *Grelle* (Tex. Civ. App.), 228 S. W. 927, reversing (Tex. Civ. App.) 190 S. W. 240, it is said: "Where one goes into possession of property under deed, or deeds, executed by a cotenant, and purporting to convey the entire property, such possession is hostile to that of the cotenant, and he is charged with knowledge of the hostile character thereof." We are of opinion that this is the correct rule.

In order for the defendant to maintain its claim to the property as a tenant in common with Fitschen and Phillips, it must of necessity give recognition to the Wampler-Roach deed to Phillips and Fitschen of September 22, 1885, and in doing so the defendant is chargeable with notice of the full scope and purpose of the conveyance. The recording of the deed, coupled with the defendant's possession thereunder, continuously thereafter, and their asserted exclusive right of possession to the property, would amount to an ouster of Noyes as cotenant, if, indeed, he were ever such in fact.

In *Prescott* v. *Nevers*, 19 Fed. Cas. 1286, Judge Story says: "I take the principle of law to be clear, that where a person enters into land under a claim of title thereto, by a recorded deed, his entry and possession are referred to such title; and that he is deemed to have a seisin of the land coextensive with the boundaries stated in his deed, where there is no open adverse possession of any part of the land, so described, in any other person. * * * There can be no legal doubt, that one tenant * * * may disseize another. The only difference

between them and other cases is, that acts, which, if done by a stranger, would *per se be* a disseizin, are, in the case of cotenancies   *   *   *   perceptible of explanation, consistently with the real title.''

It is clear that from the time that Noyes deeded back to [8]   Roach the Minnie Jane lode, March 13, 1888, he never before his death asserted any right or claim to the Minnie Jane lode or to the strip in controversy.   His relation thereto seems to have terminated, for, although he lived in Butte a short distance away from the property, and must have known the use to which it was being put by Phillips and Fitschen, he never made any claim thereto nor to any of the rents, issues or profits therefrom.   The testimony shows that during all these years, from 1881 to 1902, Noyes was a resident of Butte, living within two or three miles of this property.   It is clear that he never asserted any right to the property from 1888 to the time of his death in 1902; so that if he was a cotenant with Phillips and Fitschen after September 22, 1885, the adverse exclusive ownership of the property asserted by Phillips and Fitschen was sufficient to oust him.   The use and occupation of the property by Phillips and Fitschen, open and unequivocal, was such as to charge Noyes with knowledge.

It is shown conclusively that Phillips and Fitschen entered into the possession of the property under color of title exclusive of the rights of Noyes and all others, founding their claim upon the deed thereto from Wampler and Roach, dated September 22, 1885, and that since then they have continued in their occupancy and claim of title to the property described in the deed for a period of more than ten years, justifying the court's conclusion of title by adverse possession as a matter of law.

There being no reason to disturb the findings, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.

Rehearing denied, May 24, 1926.