*Charles Riley, Jr. Revocable Trust, et al. v. Venice Beach Citizens Association, Inc.*, No. 5, September Term, 2023. Opinion by Gould, J.

**SUMMARY JUDGMENT – PRIOR GRANTING OF SUMMARY JUDGMENT - IMPLICATION**

The Supreme Court of Maryland held that a circuit court abused its discretion in vacating a prior order granting partial summary judgment. A court's decision to vacate a prior order is reviewed for an abuse of discretion; reversal of the circuit court is appropriate if the court's decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 313 (1997) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)).

**SUMMARY JUDGMENT – COMPLIANCE WITH MARYLAND RULE 2-501(g)**

Maryland Rule 2-501(g) provides that an order that specifies "the issues or facts that are not in genuine dispute" is subject to modification by the circuit court only "to prevent manifest injustice." Appellate courts apply an abuse of discretion standard to the trial court's determination that the modification was necessary to prevent manifest injustice.

**COUNTERCLAIM - PRESCRIPTIVE EASEMENT CLAIM – REQUIREMENT TO RAISE**

A defendant's counterclaim that exists independently from the plaintiff's claim is not rendered moot if the defendant prevails on the plaintiff's claim. The defendant, therefore, is an aggrieved party if the counterclaim is dismissed. If the plaintiff appeals, the dismissal of the counterclaim is not before an appellate court and will ordinarily not be reviewed unless the defendant cross-appeals.

IN THE SUPREME COURT

OF MARYLAND

No. 5

September Term, 2023

_____

CHARLES RILEY, JR. REVOCABLE
TRUST, *et al.*

v.

VENICE BEACH
CITIZENS ASSOCIATION, INC.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Gould, J.
Hotten and Eaves, JJ., dissent.

_____

Filed: April 19, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The main issue in this title dispute is whether a party has a right to rely on a favorable partial summary judgment ruling when the rest of the case goes to trial. The issue arises from a dispute between a homeowner and a citizens association over a parcel of undeveloped land. The parcel was bisected into two sections by a stone wall. The homeowner claimed adverse possession over the entire parcel, but in an amended complaint, the homeowner treated the two sections as distinct parcels acquired at different times and on different grounds. The homeowner moved for summary judgment on the claim to the smaller section, which the circuit court granted.[1]

A different judge presided over the bench trial on the homeowner's claim to the larger section. When the homeowner finished his case-in-chief, the citizens association moved for judgment. The trial court granted the citizens association's motion and entered judgment for it on the homeowner's claims, including the claim to the smaller section that had been resolved in the homeowner's favor on summary judgment.

After the trial court denied the homeowner's motion to alter or amend the judgment, he appealed to the Appellate Court of Maryland which, among other things, affirmed the trial court's disposition of the homeowner's claims to both the smaller and larger sections.

We granted the homeowner's petition for certiorari. The citizens association did not cross-petition.

---

[1] As we explain later, the claim to the larger section was pursued by a limited liability company formed and owned solely by the homeowner. The distinction between the homeowner and his limited liability company, however, is not relevant to our analysis.

On the main issue, we hold that the circuit court abused its discretion by implicitly vacating the summary judgment entered in the homeowner's favor on his claim to the smaller section and then entering judgment for the citizens association on that claim. For the reasons discussed below, we reverse in part and remand for further proceedings consistent with this opinion.

**FACTS AND PROCEDURAL HISTORY**

Petitioner Charles Riley, Jr. bought a residential property ("home lot") on Wayman Avenue in the Venice Beach community in Anne Arundel County in 1987.[2] Riley's house faces east toward Wayman Avenue and the Chesapeake Bay. A 4,443 square foot, undeveloped parcel of land ("Subject Property") lies southeast of the home lot. The home lot shares a small part of its eastern border with the western border of the Subject Property. The Subject Property is bordered to the east by Wayman Avenue, which runs parallel to the Chesapeake Bay, and to the south by Chesapeake Avenue.

When Riley bought the home lot, the Subject Property was bisected by a block wall that severed the Subject Property into two sections: a 228[3] square foot parcel on the north

_____

[2] On August 17, 1991, Mr. Riley conveyed fee simple title of the home lot to himself in his capacity as trustee for the Charles Riley, Jr. Revocable Trust ("Riley Trust"), of which he was the sole trustee and beneficiary. Thus, after that date, Mr. Riley's actions with respect to that property, including filing this lawsuit, were undertaken in his capacity as the trustee for the Riley Trust. Because it does not affect the outcome of this case, when we refer to Riley, we will not specify whether he was acting in his individual capacity or as trustee of the Riley Trust.

[3] The record is inconsistent as to whether the Small Section was 228 square feet or 288 square feet. The survey in the record indicates it was 228 square feet, so we accept that number as correct.

side of the wall ("Small Section") and a 4,215 square foot parcel on the south side of the wall ("Large Section"). The home lot lies next to the Small Section and catty-corner to the Large Section.

The Subject Property was part of an undeveloped tract of land ("Venice Beach property") acquired by Osborn T. Taylor in 1919. The Venice Beach property was subdivided and developed into a residential community. When Mr. Osborn died in 1935, he still owned parts of the original tract, consisting of beach, roads, and undeveloped parcels—including the Subject Property ("remaining Venice Beach property").

By 1977, through *inter vivos* transfers and inheritances, the remaining Venice Beach property was owned by three individuals as tenants in common: Irena Leak, with a 37.5 percent interest, Jennie Wilder, with a 37.5 percent interest, and Benjamin Taylor, with a 25 percent interest. In 1977, Ms. Leak deeded her interest in the remaining Venice Beach property—including the Subject Property—to her son, John Clay Leak, Jr. In 1987, Mr. Leak sold his interest in one parcel of the remaining Venice Beach property—the Subject Property—to Richard and Marcella Jones.[4] And in June 2019, the Joneses deeded their interest in the Subject Property to Bay Pride, LLC ("Bay Pride"), a limited liability company formed and owned by Riley.

Ms. Wilder died in 1978, leaving her interest in the remaining Venice Beach property to her two children. In 1987, the Wilder children executed a deed to convey their

---

[4] In 1987, the Joneses conveyed their interest to a trust they established called the Jones Family Trust. This conveyance is irrelevant to any issue before this Court. To make it easier to keep track of the cast of characters, we will not distinguish between the Joneses and their trust and will refer to both as the "Joneses."

3

interest in the remaining Venice Beach property to the Respondent, Venice Beach Citizens Association, Inc. ("Association"). That interest, however, was still owned by their late mother's estate and so in the early 1990s, the transfer was declared invalid by the circuit court. In 2017, the Association received and recorded a deed correcting the defect.

Nobody seems to know what happened to Benjamin Taylor's interest. He died in 1956. His lone survivor was his wife; she died in 1996. The identities and whereabouts of his heirs are not known. So, by June 2019, the only known title holders of the Subject Property were Bay Pride and the Association.

*The Complaint*

On November 22, 2019, Riley and Bay Pride sued the Association in the Circuit Court for Anne Arundel County. They subsequently amended their complaint to join the unknown heirs of Benjamin Taylor, who were served by publication. The amended complaint asserted five counts.

In counts one and three, captioned "adverse possession" and "quiet title," respectively, Riley sought a declaration that he had acquired full legal title to the Small Section. For convenience, we will refer to these two counts as the "Small Section claim."

In counts two and four, also captioned "adverse possession" and "quiet title," respectively, Bay Pride sought a declaration that it had acquired full legal title to the Large Section. For convenience, we will refer to these two counts as the "Large Section claim."

In count five, Riley and Bay Pride asked the court to appoint a trustee to sell the Subject Property in lieu of a partition among its joint tenant owners ("Trustee Sale claim").

4

*The Association's Counterclaim*

The Association countersued Riley and Bay Pride. Claiming that the Venice Beach community residents used and maintained the Subject Property, the Association's amended counterclaim asked the court to declare, among other things, that it had a prescriptive easement benefiting those members. The Association also sought to enjoin Riley and Bay Pride from interfering with the easement.

*Riley Awarded Summary Judgment*
*on the Small Section Claim*

Riley moved for partial summary judgment on the Small Section claim. Riley's supporting affidavit explained that the block wall severing the Subject Property was there when he bought the home lot in 1987. And, in the early 1990s, he incorporated the Small Section into the home lot through landscaping, curbing, and fencing. He alone maintained the Small Section since 1987. Riley also supported his motion with affidavits from other witnesses and various deeds, emails, surveys, and pictures.

In response, the Association did not dispute that Riley incorporated the Small Section into the home lot's landscape design or that he exclusively possessed and maintained it since 1987. The Association instead argued that Riley did not establish the element of hostile use of the Subject Property. Why? Because Bay Pride held an interest in the Subject Property, and so Riley's maintenance and use of the Small Section could not have been hostile.

The circuit court (Alban, J.) heard the motion in December 2020. The court later issued a Memorandum Opinion and accompanying order granting Riley's motion ("Small

5

Section SJ Order"). As the court observed, since 1994, Riley "treated the [Small Section] as his own property through landscaping it[,]" which was "visible and obvious, making the possession open" to any observer. Rejecting the Association's argument that Riley did not establish the element of hostile use, the court noted that Bay Pride acquired its interest in 2019, and by then, Riley already owned the Small Section by adverse possession. That means when Bay Pride took title to the Subject Property, it did not include the Small Section.

*Riley Awarded Default Judgment Against*
*Benjamin Taylor's Heirs on His Small Section Claim*

As noted above, Riley and Bay Pride joined the unknown heirs to Benjamin Taylor as defendants and, with the court's permission, served them by publication. None responded, prompting Riley and Bay Pride to request an order of default, which the court granted. Riley subsequently moved for a default judgment against the Benjamin Taylor heirs on the Small Section claim, which the court (Alban, J.) also granted. With that ruling, Riley successfully resolved his Small Section claim.

Or so he thought.

*Riley and Bay Pride Awarded Summary Judgment*
*on the Association's Prescriptive Easement Counterclaim*

Riley and Bay Pride separately moved for summary judgment on the Association's counterclaim for a prescriptive easement. They focused on the Association's failure to

demonstrate the elements of adversity and uninterrupted use for 20 years.[5] They contended that the Large Section was not used by community members, other than the Joneses, until 2003 when "Hurricane Isabel dumped sand and storm debris from the Chesapeake onto the Subject Property." They claimed that before then, the Subject Property "was in a natural state, marshy in areas and overgrown with cattails and phragmites." Further, because the Association filed its counterclaim on May 14, 2020, they claimed that the Association's continuous use was fewer than 20 years. And they relied on correspondence establishing that the Association sought and received permission from Bay Pride and its predecessor, the Joneses, before holding community events there. Thus, they argued, the Association could not prove adverse use of the Subject Property.

The Association countered that when it asked for permission to use the Subject Property, it was doing so merely as a courtesy to keep the peace. The Association argued that it did not have to prove that it physically used the Subject Property for 20 years and that "one need not gather on community open space in order to enjoy the benefits the open space brings to the community." The Association maintained that although the nature of its use of the Subject Property before 2003 was different than its physical use after 2003, its use was still "sufficient to meet the criteria for its claim for its established prescriptive easement."

---

[5] A claimant seeking to establish a prescriptive easement must prove adverse, exclusive, and uninterrupted use of another's real property for 20 years. *Banks v. Pusey*, 393 Md. 688, 699 (2006).

The circuit court (Alban, J.) determined that the Association's letters seeking permission "are what they appear to be, requests for permission." The court found that the Association's request for permission "defeats the required adversity or hostility element for a prescriptive easement" and thus granted summary judgment against the Association on its amended counterclaim.

*Bay Pride's Motion for Summary Judgment*
*on the Large Section Claim*

Five months after the circuit court entered the Small Section SJ Order, Bay Pride moved for summary judgment on its Large Section claim. Bay Pride relied primarily on the deeds under which title to the Subject Property found its way from Irena Leak to, ultimately, Bay Pride. According to Bay Pride, the adverse possession clock started when, notwithstanding her joint ownership with Ms. Wilder and Benjamin Taylor, Ms. Leak conveyed a one hundred percent interest in the Subject Property to her son. The ouster continued uninterrupted when, in 1987, Mr. Leak conveyed the Subject Property by special warranty deed to the Joneses, who in turn conveyed it to the Jones Family Trust, who in turn conveyed it to Bay Pride. Again, these deeds all purported to convey a one hundred percent interest in the Subject Property without limitation or restriction. Bay Pride also pointed out that the Joneses parked their car on the Subject Property and paid the real estate taxes.

Based on these facts, and by tacking its brief ownership period onto the Joneses' 32-year ownership period, Bay Pride claimed adverse possession of the Large Section "under color of title." Bay Pride relied on several cases, including *Merryman v.*

*Cumberland Paper Co. of Allegany County*, 98 Md. 223 (1903), for the proposition that an ouster of co-tenants occurs when the grantee of a deed purporting to convey "the whole estate in fee" enters the property and "claims and holds the exclusive possession" of the same for 20 years. *Id.* at 225. The court denied the motion four days before the start of trial.

*The Trial*

Only Bay Pride's Large Section and Trustee Sale claims remained when the bench trial began.[6] A judge with no prior familiarity with the case was assigned to it the day before. Although counsel for both sides tried to explain Bay Pride's Large Section claim, the trial court acknowledged that it "ha[d] no clue what anybody's opening statement really said."

Bay Pride put on its case through two witnesses: Riley, who testified in person, and the daughter of Mr. and Mrs. Jones, Stephany Grillo, who testified through her recorded video deposition. Riley also put into evidence six exhibits.

The Association moved for judgment at the end of Bay Pride's case-in-chief. In opposition, Bay Pride advanced the same ouster theory that it had made in its summary judgment motion, focusing on the deeds of conveyance under which title passed from Irena Leak to Bay Pride as well as its and the Joneses' prior adverse use of the Large Section.

---

[6] Riley, as trustee, was named as a plaintiff in count five, the Trustee Sale claim. In their opening brief in this Court, Riley and Bay Pride explained that their Trustee Sale claim was intended to be "a conditional claim" if the circuit court determined that they "did not have absolute ownership of" the Small and Large Sections. As explained above, by the time of trial, the circuit court had already ruled that Riley owned the Small Section. Thus, at trial, only the Large Section was in play; as a result, the Trustee Sale claim concerned the Large Section and belonged only to Bay Pride.

In reply, after addressing Bay Pride's ouster theory, the Association told the court that the Small Section SJ Order could be revised and, for the first time, asked the court to enter judgment in the Association's favor "on all of these issues." The court responded that Judge Alban's decision was "not binding on" him and called for a lunch recess.

When the hearing resumed two hours later, after further discussion about Bay Pride's ouster theory, the court stated, "I'm granting the motion as to ouster." The trial judge explained that "[t]here hasn't even been a prima facie case presented for ouster. So that motion is granted. And we're going to proceed on the adverse possession only at this point. Is that correct? That's the only thing left."

In the discussion that ensued, the parties focused most of their remarks and explanations on three issues. *First*, Bay Pride explained that its Large Section claim was based on its ouster theory grounded on evidence that before the Association acquired its interest in 2019, the Joneses "dominated and controlled" the Large Section for more than 20 years—which inured to Bay Pride's benefit under a tacking theory. The Association agreed that the adverse possession claim was based on ouster but argued that Bay Pride failed to establish ouster. After listening to both parties, the trial court stated "[w]ell, it's as clear as mud, quite frankly."

*Second*, the Association tried to resurrect its counterclaim for an easement, but this time it argued for an easement by plat. When the Association tried to explain why Judge Alban's prior dismissal of that claim on summary judgment did not preclude the court from revisiting the claim, the court interrupted counsel by stating "I don't even want to hear

10

about Judge Alban. That's not binding [] in any way on me and it's got no bearing on what we're doing."

*Third*, Bay Pride reminded the court of its outstanding motion for a default judgment against the heirs of Benjamin Taylor, which requested a declaration that their collective 25 percent interest in the Large Section was now owned by Bay Pride. The Association argued in response that if the heirs' interests were forfeited, there was no reason why the forfeited interests "would go to one party and not the other owner."

The court ultimately granted the Association's motion on all counts in Riley's and Bay Pride's amended complaint, including Riley's Small Section claim. The court also denied Bay Pride's request for a ruling on the Trustee Sale claim, explaining that "[y]ou have to have clean hands to come into a court of equity."

At no point during the argument did the parties or the trial court discuss the basis for Riley's Small Section claim.

The court entered a final judgment six days later. Riley and Bay Pride then moved to alter or amend the judgment, which the trial court denied.

*The Appellate Court's Opinion*

Riley and Bay Pride timely appealed to the Appellate Court of Maryland. In an unreported opinion, the Appellate Court found that the trial court did not abuse its discretion when it implicitly vacated the Small Section SJ Order and granted judgment against Riley on his Small Section claim. *Charles Riley, Jr. Revocable Tr. v. Venice Beach Citizens Ass'n, Inc.*, Sept. Term 2021, No. 1064, 2023 WL 369752 (Md. App. Ct. Jan. 24,

11

2023). It also found that the circuit court's denial of Bay Pride's Large Section claim was not clearly erroneous.

But the Appellate Court disagreed with the trial court's refusal to consider Bay Pride's Trustee Sale claim. The Appellate Court determined that the evidence did not support a finding that Bay Pride had unclean hands and thus remanded that claim for full consideration.

Finally, based on its perception that the Association's "counterclaim for a prescriptive easement [was] tied" to the Trustee Sale claim, the Appellate Court instructed the circuit court to reconsider the Association's prescriptive easement claim if, upon full consideration, it grants the Trustee Sale claim.

### Certiorari Granted

We granted Riley's and Bay Pride's petition for certiorari. *Charles Riley, Jr. Revocable Tr. v. Venice Beach Citizens Ass'n, Inc.*, 483 Md. 571 (2023). They present two questions for our review, which we have rephrased:

1. Did the circuit court commit reversible error when, in deciding the Association's motion for judgment at the close of Bay Pride's prima facie case, it implicitly vacated the Small Section SJ Order and granted judgment in the Association's favor on Riley's Small Section claim?

2. Did the Appellate Court err in ordering the circuit court to reconsider the Association's claim for prescriptive easement, the dismissal of which on summary judgment was not appealed by the Association?

We answer both questions in the affirmative.

## DISCUSSION

*The Circuit Court Abused Its Discretion in Vacating the*
*Small Section SJ Order and Entering Judgment*
*Against Riley on His Small Section Claim*

Riley argues that having prevailed on his Small Section claim at summary judgment, he had no duty to prove his Small Section claim at trial. A contrary result, he contends, would defeat the purpose of summary judgment, which is to simplify the issues before the court. Riley contends that the Small Section SJ Order was binding and modifiable only to prevent "manifest injustice." Riley further contends that the trial judge did not review the Small Section SJ Order, let alone find that it was improvidently entered. Riley emphasizes that the timing of the trial judge's ruling—after Bay Pride put on its prima facie case— highlights the prejudice to him because by then, it was too late for him to present evidence to prove his Small Section claim.

The Association counters that vacating the Small Section SJ Order was a discretionary decision amply supported by the record evidence. The Association argues that the trial judge had the benefit of facts "unavailable" to Judge Alban, including:

1. Riley moved to Venice Beach in 1987.

2. Riley served for years on the Association's board in the early 1990s.

3. Riley knew about the Association's 1987 deed to the Subject Property and knew that it was recorded a few months after Riley bought his home lot.

4. Riley knew that the 1987 Association deed included a statement of the developer's intent to convey the roads and open areas, including the Subject Property, to the Association.

5. Riley learned in the 1990s that the 1987 deed, which provided the Association with color of title, was invalid, and that the defect needed to be corrected.

13

6. Riley, as a member of the Association, co-hosted a party along with the Association on the Subject Property in 2002.

7. Riley was a member of the board of the Association in 2017, the year the Association's deed to the Subject Property was finally corrected and recorded.

8. In January 2019, when Riley first demanded recognition that he owned "100 percent" of the Subject Property, Riley was on the board and knew that the Association had recently perfected its deed for valid title to 37.5 percent of the Subject Property.

9. Riley filed this suit in November 2019, only five months after Bay Pride received an interest in the Subject Property, and sued the Association for full ownership of the Small Section and the Large Section—to "enhance [*his*] *peaceful enjoyment of* [*his*] *property*."

The Association argues that, on these facts, the trial judge "understood Riley's 'unclean hands' and correctly made this ruling." The Association contends that because Riley is the sole trustee and only beneficiary of his revocable trust and the only member of Bay Pride, "both Petitioners—in the person of Mr. Riley"—had the opportunity to present evidence on behalf of both of them, but that such evidence "supported a contradictory conclusion than that reached by the court on summary judgment." And because the Small Section SJ Order was subject to revision at any time before final judgment was entered, the trial judge rightfully set it aside because, "[u]pon hearing and understanding [Riley's] motivations, it would have been an error to allow [it] to stand."

*Analysis*

We begin with a recognition that, "[a]s a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may ordinarily consider the matter de novo."

14

*State v. Frazier*, 298 Md. 422, 449 (1984). This principle finds expression in Maryland Rule 2-602(a), which gives the circuit court limited discretion to enter a final appealable judgment on orders that partially resolve a case.[7] *Waterkeeper All., Inc. v. Md. Dep't of Agric.*, 439 Md. 262, 288 (2014) ("The purpose of Rule 2-602(a) is to prevent piecemeal appeals, which, beyond being inefficient and costly, can create significant delays, hardship, and procedural problems." (quoting *Smith v. Lead Indus. Ass'n, Inc.*, 386 Md. 12, 25 (2005))). A court's decision to vacate its prior order is reviewed for an abuse of discretion, *Banegura v. Taylor*, 312 Md. 609, 620-21 (1988), that is, reversal is appropriate when the court's decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable," *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 313 (1997) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)).

The breadth of the court's discretion depends on context. Judges have a wide berth on some issues, *e.g.*, whether a leading question should be allowed. *Alexis v. State*, 437

---

[7] Maryland Rule 2-602(a) provides:

**Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:
    (1) is not a final judgment;
    (2) does not terminate the action as to any of the claims or any of the parties; and
    (3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

Md. 457, 479 (2014). Other discretionary decisions are "circumscribed by strong policy considerations and well-articulated guidelines." *Id.* (quoting *Canterbury Riding Condo. v. Chesapeake Invs., Inc.*, 66 Md. App. 635, 648 (1986)). The general rule allowing courts to reconsider prior rulings without deference "is inapplicable if a statute or rule reflects a different intent in a particular situation." *Frazier*, 298 Md. at 449. That exception applies here: The court's discretion to modify a partial summary judgment order is informed by Maryland Rule 2-501 and its animating principles.

A core purpose of the summary judgment process is to determine "whether there is a triable issue of fact." *King v. Bankerd*, 303 Md. 98, 111-12 (1985). Rule 2-501 serves that objective in three respects. *First*, Rule 2-501 mandates compliance with specific procedural requirements. For starters, summary judgment motions must be in writing.[8] Md.

---

[8] Rule 2-501 provides:

**(a) Motion.** Any party may file a written motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record. A motion for summary judgment may not be filed: (A) after any evidence is received at trial on the merits or (B) unless permission of the court is granted, after the deadline for dispositive motions specified in the scheduling order entered pursuant to Rule 2-504(b)(1)(F).

**(b) Response.** A response to a motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document, discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. A response asserting the existence of a

Rule 2-501(a). Facts not conceded by the nonmoving party must be supported by an affidavit. *Id.* The party opposing summary judgment must "identify with particularity" the material facts in genuine dispute and establish such disputes with supporting evidence. Md. Rule 2-501(b). This process equips the court to determine which material facts are genuinely disputed and must be determined by trial.

*Second*, the timing requirements of Rule 2-501 also serve the issue-narrowing function of summary judgment. Gone are the days when a summary judgment motion could be made orally at trial, a practice that raised "due process considerations" of "fair notice and opportunity to defend for the nonmoving party." *Beyer v. Morgan State Univ.*, 369 Md. 335, 359 n.16 (2002). Now, unless the court permits otherwise, summary judgment motions must be filed within the deadline "specified in the scheduling order entered pursuant to

---

material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath.

\* \* \*

**(d) Affidavit of Defense Not Available.** If the court is satisfied from the affidavit of a party opposing a motion for summary judgment that the facts essential to justify the opposition cannot be set forth for reasons stated in the affidavit, the court may deny the motion or may order a continuance to permit affidavits to be obtained or discovery to be conducted or may enter any other order that justice requires.

\* \* \*

**(g) Order Specifying Issues or Facts Not in Dispute.** When a ruling on a motion for summary judgment does not dispose of the entire action and a trial is necessary, the court may enter an order specifying the issues or facts that are not in genuine dispute. The order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice.

Rule 2-504(b)(1)(F)[,]" which must be at least fifteen days after completing discovery. Md. Rule 2-501(a). These timing provisions give the parties a fair opportunity to marshal evidence to support and oppose summary judgment motions and allow for a decision before trial.[9]

*Third*, the issue-narrowing function of summary judgment is served by the flexibility baked into Rule 2-501 for the parties to seek and the court to grant partial summary judgment, that is, summary judgment as to "all or part of [the] action[.]" Md. Rule 2-501(a). The motion can thus resolve fewer than all counts of a multi-count complaint or one or more elements of a single count. An example of the former would be the Small Section SJ Order, which resolved two of the five counts in the amended complaint; an example of the latter would be an order granting summary judgment on liability only, leaving damages to be determined at trial. The court can even grant summary judgment *against* the *moving* party when the summary judgment requirements are met. *See, e.g.*, *Fraternal Ord. of Police Montgomery Cnty. Lodge 35, Inc. v. Manger*, 175 Md. App. 476, 493 (2007).

But a motion must be denied if any material fact is genuinely disputed. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294 (2007). Even then, however, the court may salvage some issue-narrowing benefits of the process by using Rule 2-501(g):

> When a ruling on a motion for summary judgment does not dispose of the entire action and a trial is necessary, the court may enter an order specifying

---

[9] Moreover, if a party files a motion before the other party has had an opportunity to take the discovery necessary to establish an evidentiary basis to generate a genuine factual dispute, the nonmoving party can establish the need for such discovery with an affidavit in compliance with subsection (d) of Rule 2-501.

the issues or facts that are not in genuine dispute. The order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice.

The parties disagree on whether the manifest injustice standard in subsection (g) applies when a court revises a partial summary judgment order under Rule 2-602. Riley argues that the manifest injustice standard applies because, by its nature, a partial summary judgment narrows the issues for trial, and, in any event, the Small Section SJ Order identified the undisputed material facts in the accompanying Memorandum Opinion. The Association argues that the manifest injustice standard did not apply and that this Court should review this case "under the correct standard for abuse of discretion."

By its terms, subsection (g) applies to an order that specifies "the issues or facts that are not in genuine dispute." Md. Rule 2-501(g). The Small Section SJ Order qualifies as such, as it states, in relevant part:

> For the reasons expressed in this Court's Memorandum Opinion of even date, IT IS by the Circuit Court for Anne Arundel County, Maryland:
>
> **ORDERED**, that the Court does not find a dispute of any material fact exists in Motion for Summary Judgment A[.]

The Memorandum Opinion, in turn, recited the specific undisputed material facts supporting the ruling. Thus, under subsection (g), the Small Section SJ Order should have controlled the subsequent proceedings and was subject to modification only "to prevent manifest injustice."

In arguing otherwise, the Association seems to conflate the standard that the *circuit court* must apply when modifying an order under subsection (g) and the standard of review that an *appellate court* applies when it reviews that decision. These are distinct issues. The

19

circuit court's decision to modify an order is inherently a judgment call based on the circumstances. If the circuit court finds that modifying a prior order is necessary to prevent manifest injustice, appellate courts review *that* determination for an abuse of discretion.

In any event, even if the Small Section SJ Order were modifiable under a less onerous standard, the trial court still abused its discretion here.[10] The summary judgment process is designed to narrow the issues for trial. For it to work as intended, parties must be able to rely on partial summary judgments; otherwise, the entire exercise would be pointless, at best. From Riley's perspective, it was worse than pointless.

That is because Riley *did* rely on the Small Section SJ Order, so he had no reason to think that he would have to prove his Small Section claim again at trial. And neither the Association nor the trial judge should have expected him to do so. The Association made no pretrial request for reconsideration of the Small Section SJ Order. Nor did it take any other action to timely inform Riley that it would seek to vacate it. The Association first raised the issue during argument on its motion for judgment on the Large Section claim—

---

[10] In holding that the Small Section SJ Order was subject to subsection (g), we note that a pretrial order is modifiable under the same standard. *See* Md. Rule 2-504.2(c) ("The order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice."). Because a party's reliance interest in a partial summary judgment ruling is at least equal to its reliance interest in a pretrial order, we perceive no persuasive reason for the former to warrant less deference than the latter. But even if a less deferential standard would apply, we would be hard-pressed to justify a lower bar than the standard governing scheduling orders, which can be modified only "to prevent injustice." *See* Md. Rule 2-504(c) ("The scheduling order controls the subsequent course of the action but shall be modified by the court to prevent injustice."). Here, under either the manifest injustice standard or a plain injustice standard, the circuit court abused its discretion for the reasons discussed.

and only when it was *replying* to Bay Pride's opposition to that motion. By then, it was too late for Riley to even attempt to prove his Small Section claim.

The trial court did not even address whether the Small Section SJ Order was correct when it was made or whether any of the trial evidence undermined the basis for it. The trial court never explained why it was disregarding that order; it simply declared that it was not bound by it and did not "want to hear about" it. Nor did the court explicitly vacate the Small Section SJ Order; it skipped that part and proceeded straight to entering judgment against Riley on the Small Section claim. The result: prevailing on his summary judgment motion put Riley in a worse position than if he had never filed it. That's not how the summary judgment process is supposed to work.

We reject the Association's argument that the trial evidence tied the court's hands and compelled it to vacate the Small Section SJ Order. The Small Section and Large Section claims were based on different operative facts. The Association points to Riley's participation on the Association's board and his knowledge of its efforts to acquire title to the Subject Property—that is, the evidence of Riley's so-called unclean hands—and contends that such evidence was not before Judge Alban. But if so, it is because such evidence was irrelevant to the Small Section claim, which depended solely on Riley's incorporation of that section into his home lot. And none of that evidence was new, so if the Association believed it was relevant, the Association could have put it before Judge Alban.[11]

_____

[11] In any event, the Appellate Court correctly determined that the circuit court's finding of unclean hands was clearly erroneous.

21

Accordingly, although the circuit court has discretion under Rule 2-602 to revise or vacate an order granting partial summary judgment before final judgment is entered, the trial court abused that discretion here. We therefore reverse the Appellate Court's judgment on this issue and remand this case for further proceedings as detailed below.

*The Association's Counterclaim*
*for a Prescriptive Easement*

As noted above, Judge Alban granted summary judgment against the Association on its amended counterclaim for a prescriptive easement. At trial, when Bay Pride asked the trial court to grant its Trustee Sale claim, the Association tried to resurrect its prescriptive easement claim so that a buyer would have to honor the rights of the Venice Beach community members to use the Subject Property. The trial court denied the Trustee Sale claim and rejected the Association's request to revisit its prescriptive easement claim.

The Appellate Court vacated the judgment on the Trustee Sale claim and remanded the case with instructions to consider it. The Association did not seek further review of that decision, so that issue is not before us. But perceiving a connection between the Trustee Sale claim and the Association's claim for a prescriptive easement, the Appellate Court also instructed the trial court, on remand, to reconsider the Association's counterclaim for a prescriptive easement if it grants the Trustee Sale claim. *That* decision *is* before us.

Riley and Bay Pride argue that the Appellate Court erred because, among other things, the Association neither cross-appealed the dismissal of its prescriptive easement claim nor addressed the issue in its brief in the Appellate Court. The Association counters that it could not have cross-appealed because it "prevailed on all issues" and was thus not

aggrieved by the lower court's decision. That is, the Association insists that because the trial court denied Bay Pride's Trustee Sale claim, its request for a prescriptive easement became moot because, as an owner of the Subject Property, it did not need a prescriptive easement.

The Association's prescriptive easement claim did not depend entirely on Bay Pride's success in its Trustee Sale claim. In its amended counterclaim, the Association asked the court to declare that the Subject Property was encumbered by a prescriptive easement "for the benefit of the members and the community of Venice Beach, regardless of how the title to the Subject Property was ultimately resolved[.]" Separately, the Association requested that "in the event that the Subject Property is sold as a result of this action, that it remain subject to the unrestricted rights of Venice Beach to use and maintain the Subject Property[.]" The Association also asked the court to enjoin Riley and Bay Pride "from taking any action to interfere with the rights of Venice Beach for the continued use of the Subject Property[.]" In sum, the Association sought recognition of a prescriptive easement no matter who held title to the Subject Property—Riley, Bay Pride, the Association, or anyone else.

The Association was thus aggrieved by the dismissal of its prescriptive easement claim. As such, because the Association failed to cross-appeal, the issue was not before the Appellate Court. *See Taylor v. Wahby*, 271 Md. 101, 110 (1974). Accordingly, we reverse the Appellate Court's conditional revival of the Association's amended counterclaim.

*Conclusion*

We hold that the circuit court abused its discretion in vacating the Small Section SJ Order and entering judgment against Riley on his Small Section claim, thus we reverse the Appellate Court's judgment affirming the circuit court as to that claim. The remand orders from the Appellate Court to the circuit court should be revised to instruct the circuit court to enter a separate declaratory judgment for Riley, in his capacity as trustee, against all defendants on counts one and three of the amended complaint. The separate judgment should declare that Riley owns the Small Section and should describe the Small Section with specificity to avoid future controversies over its boundaries.

We also hold that the Appellate Court erred in conditionally reinstating the Association's counterclaim for a prescriptive easement, thus we reverse the Appellate Court's judgment as to that claim. The remand instructions from the Appellate Court to the circuit court should be revised accordingly.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED IN PART. CASE REMANDED TO APPELLATE COURT WITH INSTRUCTIONS TO REVISE ITS REMAND ORDER CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY RESPONDENT.**

IN THE SUPREME COURT

OF MARYLAND

No. 5

September Term, 2023

_____

CHARLES RILEY, JR. REVOCABLE
TRUST, *et al.*

v.

VENICE BEACH
CITIZENS ASSOCIATION, INC.

_____

Fader, C.J.
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Dissenting Opinion by Hotten, J. which,
Eaves, J., joins.

_____

Filed: April 19, 2024

I respectfully dissent.  I would answer both of Mr. Riley's[1] questions in the negative.  In my view, the circuit court did not abuse its considerable discretion when vacating an interlocutory grant of summary judgment under the facts presented.  I also would hold that the Appellate Court did not abuse its discretion in remanding the prescriptive easement claim of the Association alongside Mr. Riley's sale in lieu of partition claim, as the two claims are inextricably linked.

### The Circuit Court Did Not Abuse Its Discretion.

First, the Majority recognizes that "one judge of a [circuit] court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in [their] discretion, may ordinarily consider the matter de novo." *State v. Frazier*, 298 Md. 422, 449, 470 A.2d 1269, 1283 (1984).  Indeed, interlocutory orders under Maryland Rule 2-602 are rulings to which revisory discretion applies.  *See, e.g.*, *Henley v. Prince George's Cnty.*, 305 Md. 320, 328, 503 A.2d 1333, 1337 (1986) ("Because the order of June 2 did not dispose of the claim[,] . . . it was interlocutory and subject to revision in the discretion of the [circuit] court.").

However, the Majority points to Maryland Rule 2-501(g) as a "rule [which] reflects a different intent in a particular situation[]" and limits a subsequent judge's discretion.  *Frazier*, 298 Md. at 449, 470 A.2d at 1283.  The Majority seems to believe that, in this case, the circuit court's prior grant of summary judgment in favor of Mr. Riley was an order qualified under Maryland Rule 2-501(g).  Accordingly, the Majority believes that the

---

[1] Like the Majority, I will refer to Mr. Riley in lieu of the two entities of which he comprises the sole membership of and which are Petitioners in this matter.

circuit court could only modify the prior order to "prevent manifest injustice."  I would hold that the prior order does not qualify under Maryland Rule 2-501(g), and therefore, the circuit court did not abuse its considerable discretion in vacating the order.

Orders granting summary judgment are not inherently orders under Maryland Rule 2-501(g).  This Court applies the plain language of our Rules and reads the Rules as operating together harmoniously.  *Fuster v. State*, 437 Md. 653, 664–65, 89 A.3d 1114, 1120 (2014).  Maryland Rule 2-501(g) provides:

> When a ruling on a motion for summary judgment does not dispose of the entire action and a trial is necessary, the court *may* enter an order specifying the issues or facts that are not in genuine dispute. The order controls the subsequent course of the action but may be modified by the court to prevent manifest injustice.

(Emphasis added).  This Court has defined "may" as generally being permissive.  *Uthus v. Valley Mill Camp, Inc.*, 472 Md. 378, 397, 246 A.3d 1225, 1236 (2021).  This permissive order is distinguishable from the order granting summary judgment.  Maryland Rule 2-501(f) provides in relevant part that "[t]he court *shall* enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law."  (Emphasis added).

In *Alleghany Corp. v. Aldebaran Corp.*, 173 Md. 472, 478, 196 A. 418, 420 (1938), this Court explained the difference between a court's decree and its opinion.  There, the circuit court had issued an order for a "a writ of preliminary injunction" barring a corporation from seeking a vote within another corporation for consolidation of the two.  *Id.* at 476, 196 A. at 419.  The Appellants who sought such consolidation appealed the

2

order, expressing concern that the circuit court "in its opinion announced the conclusion that the proposed plan of consolidation violated 'rights secured by the Maryland law, and by contract[.]'" *Id.* at 478, 196 A. at 420.  We held that

> *[w]hat the [circuit] court decided must be found, and may only be found, in its decree* which is that the defendants be temporarily restrained from proceeding with the consolidation. *That conclusion was expressed in its decree which alone is definitive.*  Its reasons for that conclusion as expressed in its opinion, while helpful and entitled to great weight, do not determine the propriety of its decree, for the decree may be affirmed even though the reasons for it are wrong.

*Id.*, 196 A. at 420 (emphasis added).

In *Randolph Hills, Inc. v. Shoreham Devs., Inc.*, 266 Md. 182, 188, 292 A.2d 662, 665 (1972), the circuit court issued "a memorandum and order granting . . . motions for summary judgments[.]" *Id.* at 187, 292 A.2d at 664–65.  This Court held that, while

> [i]t would appear from the text of the memorandum that [the circuit court] intended to follow the mandate of [Maryland Rule 610 d 4,[2]] . . .[the circuit court] failed to incorporate . . . the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in the controversy . . . in [its] formal order."

*Id.* at 188, 292 A.2d at 665.  We relied on *Alleghany Corp.* to opine that "it has been long established that the language of a memorandum or opinion cannot be imported in an order or decree save in cases where the order or decree is ambiguous[.]" *Id.*, 292 A.2d at 665.

To rectify this absence, the party for whom summary judgment was ordered "filed a motion for the entry of an order limiting issues[,]" but no action on this motion was taken. *Id.* at 189, 292 A.2d at 665.  Instead, the record indicated that the circuit court issued an

---

[2] *See* Md. Rule 2-501 ("Section (g) is derived from former Rule 610 d 4.").

3

"oral order" which sought to limit the issues of the subsequent trial. *Id.*, 292 A.2d at 665. We concluded that this "order" was "deficient in form[,]" opining that "[i]t cannot be fathomed from the record what this 'oral order' was and it was certainly never entered on the docket. We can only assume that it may have been an oral repetition of the provisions of the [initial] memorandum." *Id.*, 292 A.2d at 665–66.

Both *Alleghany Corp.* and *Randolph Hills, Inc.* held that an order may not qualify under Maryland Rule 2-501(g) by virtue of an accompanying memorandum opinion. What Mr. Riley requests and the Majority holds is inapposite to our precedent. As recited by the Majority, the previous order granting summary judgment in favor of Mr. Riley does not expressly limit the issues in a subsequent trial. Op. at 19. Like *Randolph Hills, Inc.*, the circuit court did not express the requisite limiting directive in the order to bring it under Maryland Rule 2-501(g). Thus, the order was within the broad revisionary reach of subsequent trial judges' discretion. *See, e.g.*, *Henley*, 305 Md. at 328, 503 A.2d at 1337 ("Because the order of June 2 did not dispose of the claim[,] . . . it was interlocutory and subject to revision in the discretion of the [circuit] court.").

We have held that the abuse of discretion standard is very deferential. *See Wilson v. John Crane, Inc.*, 385 Md. 185, 199, 867 A.2d 1077, 1084 (2005) ("[A]n abuse of discretion should only be found in the extraordinary, exceptional, or most egregious case."); *Devincentz v. State*, 460 Md. 518, 550, 191 A.3d 373, 391 (2018) ("[T]he [circuit] court's decision must be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." (quotation marks and citation omitted)). "[D]iscretion will not be disturbed unless clearly shown to

4

have been abused[,]" and it shall not be disturbed "particularly . . . where[] . . . the [matter] . . . was decided by the [circuit] court on the merits[.]" *Hardy v. Metts*, 282 Md. 1, 6, 381 A.2d 683, 686 (1978).

In the view of the Majority, the circuit court's vacatur of the prior grant of summary judgment was an abuse of discretion by virtue of exceeding the limitation of Maryland Rule 2-501(g). In the alternative, the Majority posits that the circuit court abused its discretion by disregarding the purpose of the summary judgment rules. Op. at 20. Neither of these are the case here. As explained, in my view, the prior grant of summary judgment was not qualified under Maryland Rule 2-501(g). I would hold that our precedent supports a different conclusion than the alternative grounds advanced by the Majority.

Our general rule, as expressed in *Frazier*, has roots extending over two-hundred years. *See Robinson v. Harford Cnty. Comm'rs*, 12 Md. 132, 141 (1858) ("It has been long settled . . . that during the entire term in which a judgment is rendered in a court of record, the judgment is under the control of the court, and liable to be stricken out, altered, or amended[.]"). We have previously explained that the rationale behind this is because "the trial judge, who occupies *a position of greater responsibility*, should have the right to reject a prior decision of a judge of equal jurisdiction[.]" *Nat'l Liberty Ins. Co. of Am. v. Thrall*, 181 Md. 19, 23, 27 A.2d 353, 355 (1942) (emphasis added).

The Majority posits that the vacatur of the prior order defeated the purpose of the summary judgment rule and placed Mr. Riley in a worse position than he would have been had he not moved for summary judgment. Op. at 21. The circuit court's vacatur does not defeat the purpose of the rule. The Majority points to *King v. Bankerd*, 303 Md. 98, 111–

5

12, 492 A.2d 608, 615 (1985) for the purpose of summary judgment in determining whether there is a triable issue of fact. Op. at 16. However, this intent does not exist in a vacuum. *Fuster* requires our Rules to be read as "operat[ing] together as a consistent and harmonious body of law[.]" 437 Md. at 664, 89 A.3d at 1120 (quotation marks and citation omitted). The purpose of Maryland Rule 2-602(a) is to prevent "piecemeal appeals[.]" *Smith v. Lead Indus. Ass'n, Inc.*, 386 Md. 12, 25, 871 A.2d 545, 553 (2005). As opposed to interlocutory orders under Maryland Rule 2-602(a), entering *final* judgment under section (b) is reserved for the "very infrequent [and] harsh case." *Id.* at 24, 871 A.2d at 552 (quotation marks and citation omitted).

*Nat'l Liberty Ins. Co.* speaks of the trial judge's "greater responsibility[]" as compared to previous judges in the same matter. 181 Md. at 23, 27 A.2d at 355. Indeed, a trial judge is "obliged" to override a prior order "if [they] conclude[] that it had been improvidently issued." *Langrall, Muir & Noppinger v. Gladding*, 282 Md. 397, 402 n.3, 384 A.2d 737, 740 n.3 (1978). The record supports the circuit court's belief that vacatur was demanded here. The circuit court indicated that Mr. Riley had failed to offer even a "scintilla" of evidence of the Association's ouster, a necessary element of Mr. Riley's adverse possession claim. *See Hanson v. Johnson*, 62 Md. 25, 29 (1884) ("The mere entry and possession of one tenant in common . . . will not be adverse to the co-tenant[.] . . . To constitute adverse possession in such cases, there must be an *ouster*, an entry and possession, hostile to the title of the co-tenant.") (emphasis in original).

Maryland's long history of granting revisory authority to trial judges evidences an intent in the interlocutory order rule to preserve issues, even if set aside from trial, for

6

subsequent circuit court review if the facts and justice demands it. To read Maryland Rules 2-501 and 2-602 harmoniously, an interlocutory summary judgment order cannot inherently become a final judgment. Such occurrences would not be the "infrequent" cases that *Smith* contemplates. 386 Md. at 24, 871 A.2d at 552. To accept otherwise would allow piecemeal appeals from every interlocutory summary judgment order, in violation of the purpose of Maryland Rule 2-602(a). *Id.* at 25, 871 A.2d at 552. Further, Mr. Riley's reliance on the prior grant of summary judgment is not persuasive. Maryland Rule 2-602(a)(2) states that "an order . . . that adjudicates fewer than all of the claims in an action[;] . . . does not terminate the action as to any of the claims or any of the parties[.]"

In my view, this is not "the extraordinary, exceptional, or most egregious case[,]" *Wilson*, 385 Md. at 199, 867 A. 2d at 1084, nor is it "beyond the fringe" of minimal acceptability. *Devincentz*, 460 Md. at 550, 191 A.3d at 391. The circuit court did not abuse the considerable discretion it is afforded in considering the facts presented and reconsidering a prior interlocutory order in the same action.

## The Appellate Court Did Not Abuse Its Discretion.

In reversing the Appellate Court's remand of the Association's counterclaim for a prescriptive easement, the Majority relies on *Taylor v. Wahby*, 271 Md. 101, 110, 314 A.2d 100, 105 (1974). Op. at 23. There this Court reiterated that we "consistently follow[] the rule that a judgment or decree from which no appeal has been taken may not be reversed for the benefit of one who did not appeal even though in regard to him the judgment or decree was both erroneous and injurious." *Taylor*, 271 Md. at 110, 314 A.2d at 104–05. In the view of the Majority, because the Association requested a prescriptive easement

7

regardless of who owned title to the Subject Property, including the Association itself, when the circuit court granted summary judgment against the Association's counter claim the Association became aggrieved. Op. 23. With respect, I do not agree.

This Court has held that "[a] basic rule of appellate jurisprudence is that a party may not appeal from a judgment wholly in its favor." *Rodriguez v. Cooper*, 458 Md. 425, 441, 182 A.3d 853, 863 (2018) (cleaned up). In my view, the Association was correct: the judgment from the circuit court vacating the prior order and entering judgment for the Association was wholly within the Association's favor and precluded its appeal. If one retains title to land, they cannot gain an easement over their land. *See, e.g.*, *Lindsay v. Annapolis Roads Prop. Owners Ass'n*, 431 Md. 274, 292, 64 A.3d 916, 927 (2013) ("[U]nity of ownership of both the dominant and the servient estates extinguishes generally any easements[.]"); *Hall v. City of Balt.*, 56 Md. 187, 195 (1881) ("The implied covenant . . . was rescinded and abrogated by the deed . . . whereby [the owner] acquired the fee simple title . . . and consequently all right[s that] . . . could be derived only from the implied covenant of the parties, no longer existed.").

Following the grant of judgment in the Association's favor by the circuit court, the Association retained its title to the Subject Property and could not have received an easement. Accordingly, the Association could not have appealed to the Appellate Court. However, the Appellate Court recognized the inexorable link between the Association's counter claim and Mr. Riley's sale in lieu of partition claims and exercised its discretion to revive the issue and remand it for consideration. Maryland Rule 8-131(a) provides the Appellate Court the discretion to reach issues not before it "if necessary or desirable to

8

guide the [circuit] court or to avoid the expense and delay of another appeal." *See Jones v. State*, 379 Md. 704, 713, 843 A.2d 778, 783 (2004) ("[A]n appellate court has discretion to excuse a waiver or procedural default and to consider an issue even though it was not properly raised or preserved by a party.").

"[W]e do not reverse the [Appellate Court] for the exercise of its discretion unless it has clearly been abused." *Jones*, 379 Md. at 715, 843 A.2d at 784. Indeed, "we respect the judgment of the [Appellate Court] in determining whether it needed to consider the issue for the proper execution of justice[.]" *Id.*, 843 A.2d at 785. In the judgment of the Appellate Court, "[b]ecause the claim for a prescriptive easement is tied to the claim for sale in lieu of partition, it should be reconsidered and ruled upon on remand in the event the court grants the claim for sale in lieu of partition." *Charles Riley, Jr. Revocable Tr. v. Venice Beach Citizens Ass'n, Inc.*, No. 1064, Sept. Term, 2021, 2023 WL 369752, at *15 ( Jan. 24, 2023). Arguably, "the proper execution of justice[]" would incentivize the consideration of the Association's counterclaim lest the Association, as the Majority feared for Mr. Riley, suffers from their success at the trial level. Regardless, I do not believe it is our place to overrule the discretion of the Appellate Court absent an abuse of that discretion, which I do not see. For these reasons, I respectfully dissent.

Justice Eaves has authorized me to state that she joins in this opinion.